19824

Martin A. DUNCAN and Mary Pat Anthony, Executor and Executrix, Respectively, under the Last Will and Testament of I. Q. Anthony, Jr., Appellants, v. BROOKVIEW HOUSE, INC., et al., Respondents.

(205 S. E. (2d) 707)

450

*James R. Thompson, Esq.,* of *Saint-Amand, Thompson & Brown,* Gaffney, *for Appellants,*

*Messrs. A. Ray Godshall and Jonathan Z. McKown,* of Gaffney, and *Thomas W. Whiteside,* of Spartanburg, *for*

*Respondents,*

May 20, 1974.

Moss, Chief Justice:

Brookview House, Inc., was issued a charter by the Secretary of State on May 18, 1967, pursuant to an application therefor made by I. Q. Anthony, Jr., now deceased, F. W. Sossamon, Jr., and Charles P. Stroup, to engage in the operation of a nursing home. The application recited that F. W. Sossamon, Jr., was President, Charles P. Stroup, Vice President, and I. Q. Anthony, Jr., Secretary and Treasurer. The application also recited that the three above named constituted the Board of Directors of the corporation. The record discloses that the three incorporators above named agreed to incorporate with a capital stock of $50,000 and to issue 500 shares of stock with a par vaue of $100.00 per share. Each of the incorporators was to own one-third of the 500 shares. F. W. Sossamon, Jr., being a general contractor, agreed to build the nursing home for $277,347, and he was paid this amount less $15,150. which was to be applied to his purchase of one-third of the stock in the corporation. Thereafter, Sossamon paid in cash $1,517, making a total of $16,667, this amount representing the payment for his one-third interest.

Charles P. Stroup was to have a one-third interest in the corporation. It appears that he partly paid in cash for such interest. We have been informed by the parties that he has made an amicable settlement with the parties to this action and is no longer concerned with the outcome thereof. Hence, we do not pursue his involvement any further.

It appears that I. Q. Anthony, Jr., as Secretary and Treasurer of the corporation, personally directed the operation of the nursing home.

The corporation began experiencing financial difficulties, and on May 9, 1969, I. Q. Anthony, Jr., as Secretary and Treasurer, negotiated a loan from the Citizens and Southern National Bank of South Carolina at Gaffney, in the amount of $15,000 and executed a note evidencing such a loan, including interest, in the amount of $16,215, payable one year from the date of execution with interest after maturity. As security for the payment of the loan Anthony pledged and hypothecated to the bank certain stocks which he personally owned. In addition to this security, Sossamon and Stroup personally signed an instrument unconditionally guaranteeing the payment of the note. The amount of the loan so made was credited to the account of the corporation.

The aforesaid note became due and was not paid in accordance with its terms and in order to prevent the sale of the stock which I. Q. Anthony, Jr., had pledged as security for the payment thereof, he having died in the meantime, his estate paid the note and took an assignment thereof. Martin A. Duncan and Mary Pat Anthony, executor and executrix, respectively, of the Last Will and Testament of I. Q. Anthony, Jr., the appellants herein, on September 12, 1970, commenced an action against Brookview House, Inc., F. W. Sossamon and Charles P. Stroup, the respondents herein, to recover the sum paid by the estate on the aforesaid obligation to the bank. The appellants maintain that as a result of having paid the note of the corporation and receiving an assignment thereof, they are entitled to recover from the corporation and the two guarantors the amount so paid.

The respondents, by way of answer and counterclaim, alleged that I. Q. Anthony, Jr., was one of the organizers, creators and incorporators of Brookview House, Inc., and that he was the Secretary and Treasurer thereof and actively participated in the operation of the nursing home and in conducting its affairs. It was further alleged that I. Q. Anthony, Jr., had contracted, promised and agreed to purchase a one-third interest in the corporation for the sum of $16,666.67, and that he had not paid this amount to the corporation and that his indebtedness to the corporation should be offset against the amount his estate seeks to recover in this action.

This case was referred to a Special Referee to take the testimony and to report the same to the court with his findings of fact and conclusions of law. In obedience to said order the testimony was taken and the Referee filed his findings and recommendations. The appellants served exceptions to the report. When such appeal was heard by the Honorable George Bell Timmerman, Jr., presiding judge, he issued an order referring the case back to the Special Referee for specific findings and conclusions on the issues raised by the pleadings. The supplemental report of the Special Referee was subsequently filed and the appellants duly excepted thereto. These exceptions came on to be heard before the Honorable John Grimball, presiding judge, and he issued his order confirming the report of the Special Referee. It is from this order that the appellants prosecute this appeal.

It appears from the evidence that Brookview House, Inc. obtained a loan of $299,900.00 through Southern Mortgage Company which loan was insured by the Federal Housing Administration. One of the regulations of the Federal Housing Administration required the corporation to have $47,000.00 in assets. In support of the application for the loan and to comply with Federal Housing Administration regulations, I. Q. Anthony, who was a contractor engaged in plumbing, heating and electrical wiring, did, on April 30,

1969, in writing, certify that he owned a one-third interest in the corporation. The certificate was as follows:

"To comply with certification required to accompany FHA Form No. 3378A, this is to certify that there is an identity of interest as following:

"Sub-Contractor, Anthony's, has an interest in Brookview House, Inc. I. Q. Anthony, owner of Anthony's owns one-third interest in Brookview House, Inc."

An officer of the Citizens and Southern National Bank was called as a witness by the appellants for the purpose of showing that the bank had assigned the Brookview House, Inc. note and the guaranty agreement heretofore referred to as the estate of I. Q. Anthony. He testified that I. Q. Anthony told him that he, F. W. Sossamon, Jr., and Charles P. Stroup were the sole owners, stockholders and officers of the corporation.

A certified public accountant testified that he prepared financial statements and balance sheets for the corporation. This witness testified that Anthony told him that he had a one-third ownership interest in the corporation. He also said that he conferred with Anthony, Sossamon and Stroup, and they told him that each one owned a one-third interest in the corporation and that there was no record of the payment to the corporation by I. Q. Anthony for his one-third interest. This accountant set up in his balance sheet that I. Q. Anthony owed on his stock subscription $16,666.67. There was attached to this financial statement this note: "the three stockholders, Charles P. Stroup, I. Q. Anthony, and F. W. Sossamon, Jr., each owe balances on their shares of the common stock representing their interest in the corporation."

A representative of an insurance agency that wrote the contractor's bond for the corporation when the nursing home was constructed testified that I. Q. Anthony told him that he was going to be a one-third interest owner and that

he was going to do a major portion of the work at the nursing home.

A representative of a hospital supply and equipment company entered into a contract to furnish such for the nursing home. He testified that during the negotiations I. Q. Anthony told him that he, Sossamon and Stroup were the owners of the nursing home, and that Anthony led him to believe that he owned a one-third interest.

A plastering contractor who installed the partitions, walls, ceiling and floors in the nursing home testified that I. Q. Anthony told him that he had a one-third interest in the nursing home. He further testified that he saw a stock or a stock subscription in Sossamon's office which he believed to be signed by Anthony.

The appellants offered no testimony refuting or denying that I. Q. Anthony owned a one-third interest in the corporation. There was no denial that Anthony, Sossamon and Stroup entered into a preincorporation agreement to obtain a charter for Brookview House, Inc. and that the three of them were to be the officers and directors of the corporation.

Based upon the testimony and the record in this case, the Special Referee found that I. Q. Anthony was one of the organizers, creators and incorporators of Brookview House, Inc.; that after the corporation was formed he was a director and Secretary and Treasurer thereof and actively participated in the operation of the nursing home. Anthony asserted in writing to the Federal Housing Administration that he owned a one-third interest in the corporation and he also so stated to numerous other persons. The Special Referee recommended that the amount owing by I. Q. Anthony for his stock in the corporation be offset against the amount alleged to be due on the corporation note which was assigned to the appellants. The Special Referee further recommended judgment in favor of the appellants against Sossamon and Stroup under the guaranty agreement for one-third each of the difference between the amount paid

the bank by Anthony's estate and the sum due by Anthony's estate to the corporation. The trial judge thereafter found that Anthony's estate was entitled to receive 166 shares of the common stock of the corporation, this representing a one-third interest ownership in the corporation.

The appellants timely appealed from the recommendations contained in the report of the Special Referee. The appeal was heard by the Honorable John Grimball, presiding judge, and he issued his order in which he concluded that the Special Referee had properly decided the issues involved. The appellants contended that the Anthony estate could not be held liable for the purchase of a one-third interest in the corporation on the ground that any alleged stock subscription by I. Q. Anthony, not being in writing, could not be enforced by reason of Section 12-15.5(b). The trial judge found no merit in this contention and held that I. Q. Anthony, and now his estate, was estopped to assert such a defense in view of his action, representations and transactions as an officer, director and owner of a one-third interest in the corporation. We agree.

The promoters of a corporation occupy a relation of trust and confidence towards the corporation which they are calling into existence as well as to each other, and the law requires of them the same good faith it exacts from directors and other fiduciaries. *Wilson v. Mc-Clenny,* 262 N. C. 121, 136 S. E. (2d) 569. In the cited case there is an applicable quotation from Fletcher, Private Corporations, Sections 191 and 208, as follows:

"No public policy forbids contracts for promoting and managing a corporation according to law and for lawful purposes, or for determining among themselves (the promoters) what the stock shall be and how it shall be divided, or for election of themselves as officers and employment by the corporation when formed."

The rights and liabilities of promoters *inter se* are determined by the terms of the agreement which they have made between themselves and the fiduciary

relationship which they bear to each other. An agreement or contract between promoters of a corporation is governed by the general principles of the law of contracts. Such an agreement is as valid and binding as any other contract if the essential elements of an enforceable agreement are present. The presumption is that a promoter's contract is valid and legal; the law will not assume an intention to violate it and, if possible, will so construe it as to uphold and validate it. 18 Am. Jur. (2d), Corporations, Sections 135 and 136.

Under the evidence here, there can be no question but that it was the intention of Anthony to become a one-third owner of the corporation. Anthony was a promoter, organizer and incorporator of Brookview House, Inc. He was elected a director and Secretary and Treasurer and thereafter was general manager of the corporate operations. The circumstances surrounding a subscription for stock in a corporation, and the subscriber's subsequent conduct, may be such that the subscriber is estopped to deny his liability on the subscription. In *Shiffer v. Akenbrook,* 75 Ind. App. 149, 130 N. E. 241, it was held that a subscriber who participates in the organization of the corporation, and asserts the rights of a stockholder after the formation of the corporation, and makes no effort to withdraw his subscription, cannot deny that he is a stockholder and is liable on his subscription. In the cited case there is a quotation from Cook on Corporations (4th Ed.) Section 52, discussing the question of estoppel and is as follows:

"When one accepts or assumes the position and duties and claims the rights and privileges and emoluments of a stockholder, and the corporation accepts and acquiesces therein, such person is estopped to deny that he is a subscriber, even though there may have been something irregular or defective in the form or manner of his subscription, or there may have been no formal subscription at all."

We conclude from a careful review of the record in this case that there was a mutual enforceable agreement among I. Q. Anthony, F. W. Sossamon, Jr. and Charles P. Stroup to organize and form a corporation to be known as Brookview House, Inc., each contracting to own one-third of the shares of stock therein. In view of our conclusion that I. Q. Anthony and now his estate are estopped to deny that he was a subscriber for a one-third interest in the shares of the corporation, Section 12-15.5(b) has no application.

The appellants objected to the testimony of F. W. Sossamon, Jr. on the ground that it was a violation of the Dead Man's Statute, Section 26-402 of the Code, and allege here that it was error to admit such. The Special Referee excluded this testimony from consideration in arriving at his conclusions. It follows that the question sought to be raised is without merit.

The exceptions of the appellants are overruled and the judgment below is,

Affirmed.

LEWIS and LITTLEJOHN, JJ., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting) :

Being of the view that the judgment below should be reversed, I most respectfully dissent. To bring the issues into proper perspective, this is an action at law in which the appellants sought to recover money upon a guaranty contract, and the respondents sought, *inter alia* an offset against their liability, predicated upon an alleged express contract upon the part of I. Q. Anthony to purchase one-third of the authorized capital stock of Brookview House, Inc. at the par value thereof to wit: $16,666.67. The cause was referred by consent and the findings of fact by the special referee, confirmed by the circuit court, are conclusive upon this Court, unless without evidentiary support in the record.

It may be that I do not correctly perceive, but as I understand it, the proposed majority opinion is predicated upon the supposed existence of the express contract on the part of Anthony alleged and relied upon by the respondents. The special referee, however, found that the respondents had proved no such express contract, which finding of fact was not excepted to and was binding upon the circuit court and is upon this Court. The lower court did not find that plaintiff Anthony was liable for the purchase of one-third of the authorized capital stock of the corporation, but liable for a lesser amount and on a theory other than the express contract relied upon by the respondents. I quote the following from the first report of the referee:

"I find that, except for the findings in Paragraph 5, that the evidence, including the conduct of the officers and the Corporation during Mr. Anthony's lifetime and the conduct of the officers and the Corporation after his death fail to satisfy me that Mr. Anthony's estate was liable to the Corporation for any alleged stock subscription. The statements made by Mr. Anthony to various persons are evidence of ownership in the Corporation, but fall short of establishing legal liability. In fact, the conduct of all concerned would suggest that the terms of the purchase of the stock by Mr. Anthony were not finalized."

The quoted finding was re-affirmed in the supplementary report of the referee. Again no exception was taken.

The liability of the estate of Anthony as adjudged below was not for the purchase of one-third of the authorized capital stock of the corporation, but rather for one-third of the sum of $47,000.00 predicated on the finding of the special referee in Paragraph 5 of his report, referred to in the quotation above. The pertinent portion of Paragraph 5 upon which liability below was predicated reads as follows:

"The testimony establishes clearly that in order to secure a government insured loan, Brookview House, Inc., had to have $47,000.00 of assets, which were to be received from

the sale of the stock or services. The rights and obligations of the Corporation, of Mr. Sossamon and/or Mr. Stroup were not before me. It is clear that Mr. Anthony so represented to the government that he was the owner of one-third interest in Brookview House, Inc. See Sossamon's Exhibits 'E' and 'D': The Corporation is now in an unsound financial condition. Certainly, one reason for the government requirement was to insure some degree of financial stability. I find and so hold that Mr. Anthony's estate is liable to the Corporation for the capital stock." (The referee limited such liability, however, to one-third of the $47,000.00).

Liability of the estate of Anthony could not be soundly predicated on the foregoing basis for more than one reason. The respondents relied upon an express contract, which they could not prove, but are afforded relief upon an implied obligation arising out of an alleged representation to FHA. In the absence of an amendment to the pleadings to bring the issue before the court, liability may not be properly predicated upon an implied contract when only an express contract has been pleaded and relied upon. *Phillips Refrigeration Company v. Commercial Credit Company,* 256 S. C. 500, 183 S. E. (2d) 330; *Howard & Foster Co. v. Citizens National Bank,* 133 S. C. 202, 130 S. E. 758; 6 West's South Carolina Digest, Contracts, Key No. 346(12).

There was testimony by Sossamon that FHA required that the corporation have $47,000.00 in cash, to comply with regulations and as a prerequisite to the loan. He did not testify, however, that such had to be received from the sale of stock or services and on cross examination testified to the effect that under FHA requirements the $47,000.00 could be borrowed money, still owed by the corporation. I fail to find in the record any evidence to the effect that Anthony made any representation at any time, to anyone, as to the existence of the $47,000.00 or its source.

The record reflects that the nursing home project had its inception sometime early in 1967 and actually commenced

operation about February, 1969. The record does not reflect the date of the application for the FHA loan but it is obvious that such was applied for and approved long before the nursing home commenced operations. The only representation by Mr. Anthony to FHA, reflected in the record, and relied upon by the referee and the lower court as a basis for his liability, was a representation dated April 30, 1969, long after the project was in operation, and of course, such was not in support of the loan application and could not constitute an inducement for making the loan which had long before been arranged.

Anthony was engaged in the business of "plumbing-heating-electrical wiring" and in such capacity was a sub-contractor in the course of the construction of the nursing home, Sossamon being the general contractor. Upon the completion of the project, and at least inferentially as a prerequisite to obtaining final payment on their respective contracts, it was required of each contractor that he file a "Contractor's Certificate of Actual Costs" and in connection therewith each contractor was required to disclose to FHA what, if any, financial interest the contractor owned in the project. It was in compliance with this "Identity of Interest" requirement that Anthony in his capacity as a sub-contractor on the project stated to FHA on April 30, 1969 that he owned a one-third interest in "Brookview House, Inc." FHA is not a party to this proceeding and there is nothing in the record to suggest wherein FHA or any one else was prejudiced as a result of this erroneous representation by Anthony, made after the completion of the project.

In the final analysis the judgment below rests solely upon a holding that this belated representation by Anthony to FHA rendered the estate of Anthony somehow liable to Brookview House, Inc. for one-third of the sum of $47,000-.00. Upon just what basis in law such a holding may soundly rest is not suggested in the reports of the special referee, the decree of the lower court confirming the same,

nor in the proposed majority opinion, and I, personally, am aware of no such basis.

I would reverse the judgment below and remand the cause for further proceedings not inconsistent with the views herein expressed.