1938

Maj. Gen. Guy H. GODDARD, Ret., Margaret R. Goddard, Robert M. Stone, Carol J. Stone, Norris H. Lewis, Betty L. Lewis, Robert W. Kuhn, Frances P. Kuhn, Appellants v. FAIRWAYS DEVELOPMENT GENERAL PARTNERSHIP, Fairways Villas Homeowners Association, Inc., and John Bakhaus, Respondents.

(426 S.E. (2d) 828)

Court of Appeals

*Charnell G. Peake,* Columbia, *for appellants.*

*Edward M. Woodward, Jr.,* Columbia, *for respondents.*

Heard Oct. 14, 1992.

Decided Jan. 11, 1993.

CURETON, Judge:

At trial, the master-in-equity refused to dissolve or reform a planned unit development (PUD) and denied the plaintiffs other relief. We affirm in part, reverse in part and remand.

Respondent, Fairways Development General Partnership (Developer), began developing the PUD in the early 1980's. The original design envisioned the building of approximately 90 villas. To date, only five villas have been built; the last one was completed in 1982.

The PUD is governed by a "Declaration of Covenants, Conditions and Restrictions (Declarations) which grant superior voting rights to the developer until virtual completion of the PUD.[1] It creates "Fairway Villas Homeowners Association" (Association), with mandatory membership for all villa owners. The Declarations require the Association to own the common areas and to be responsible for maintaining these areas. The Association is funded by assessments against each villa. The Declarations provide for amendment by 90% of the villa owners and dissolution with the consent of 100% of the villa owners.

In June 1982, after filing the Declarations, the developer executed a deed conveying the common areas, with the exception of the common areas surrounding appellant Goddard's

---

[1] Article 111 of the Declarations creates two classes of voting rights in the Association. Class "A" is all "Owners" except the Developer; they have one vote for each "Lot" owned. Class "B" is the Developer; it has 50 votes for each "Lot" owned, and a total of 1500 votes for the existing "Parcels." As each "Parcel" is subdivided, the Developer receives 50 votes for each resulting "Lot." This class system continues until the number of Class A votes equals the number of Class B votes.

house, to the then-nonexistent Association.[2] The deed was delivered to the Developer's attorney but was not filed. The Developer incorporated the Association in April 1984.

In February 1987, after all five villas were sold, the Association held its first meeting. The Developer filed the deed conveying the common areas to the Association on the same date as this first meeting.

The Association held its second and last meeting in March 1987. At this meeting, the Association elected Ullman, who was dismissed as a party to this action by the master, as president, and the Developer notified the villa owners that the Association would thereafter be responsible for maintenance of the common areas. Until this time, the Developer had maintained the common areas at its expense.

The present controversy developed subsequent to the last meeting of the Association. The heart of the disagreement is the "viability" of the PUD. Because there are only six lot owners in the PUD that are required to pay assessments under the Declarations, they are the only sources of funds to maintain the common areas.[3] Present assessments are inadequate to maintain the common areas. Appellants have sought relief by proposing alternatively: (1) the Developer pay assessments in proportion to its voting power in the Association, or (2) dissolution of the PUD, transfer of the common areas to the villa owners in fee simple and conversion of the PUD into a standard subdivision. These efforts failed. The Developer has refused to pay assessments in proportion to its voting power; it has agreed to pay assessments only on the one lot it owns. Appellants cannot force a dissolution of the PUD because to do so requires a one hundred percent vote of the lot owners. The Developer and Ullman have refused to consent to a dissolution. However, during oral argument before this court, the Developer's attorney announced it did not object to dissolving the PUD but would not do so over the objection of Ullman.

---

[2] Pursuant to the Declarations, the common areas consist of all roads and all other areas in the PUD with the exception of the actual land located under the villa structures. The common areas surrounding Goddard's villa have never been deeded to the Association. However, the Developer has indicated he is willing to convey these areas to the Association.

[3] While the Developer owns several undivided parcels of land in the planned PUD, he owns only one lot.

Assessments for common area expenses are made against lots, not parcels of land. Accordingly, unless and until the Developer subdivides parcels into lots, the undeveloped land in the PUD is not subject to assessment. Because of the Developer's superior voting power, it may unilaterally control assessments. With the exception of electing Ullman as the Association's president, there is no evidence the Developer has exercised this unilateral power.

The appellants claim the master committed reversible error in (1) holding that maintenance of the common areas is the responsibility of the Association because those areas are owned by the Developer, (2) not granting a dissolution of the PUD, (3) not finding a breach of fiduciary duty by respondents and awarding damages, (4) not allowing testimony in regards to misrepresentations made by respondents, and (5) not characterizing their complaint as legal, entitling them to a jury trial. They also assert other errors of law entitling them to a reversal of the master's order.

■ Appellants assert the master was incorrect in holding them responsible for assessments for maintenance of the common areas because these areas are owned by the Developer. They argue that because the deed to the common areas was executed before the Association became a legal entity, and the deed was never legally delivered, the conveyance to the Association is invalid. The master's order does not discuss either of these grounds. Moreover, the appellants' Rule 59(c) motion[4] and the order denying the motion do not mention these grounds. Issues on which the trial judge never ruled and which were not raised in posttrial motion are not properly before this court. *SSI Medical Services, Inc. v. Cox*, 301 S.C. 493, 494, 392 S.E. (2d) 789, 793 (1990).

■ Appellants also challenge the failure of the master to dissolve the PUD and place ownership of the common areas in the villa owners. Contrary to the holding of the master in dismissing Ullman as a party defendant, she is an indispensable party because changing the form of ownership of the common areas affects her property interests.[5]

---

[4] We note from the record that the appellants' counsel mentioned the invalidity of the deed during the motion hearing. However, the motion does not assert this ground as a basis for relief.

[5] Appellants did not object to Ullman being dismissed as a party defendant because, as stated by the master, "there were no allegations against her."

*Stewart v. State Crop Pest Commission,* — S.C. —, 414 S.E.
(2d) 121, 125 (1992) (a party is indispensable if an action will
not afford complete relief among those already parties, will
impair or impede an absent party's ability to protect his inter-
est, or will leave parties already in the suit subject to substan-
tial risk of incurring multiple or inconsistent obligations be-
cause the absent party was not joined). Ullman's counsel indi-
cated at trial that she was opposed to a dissolution of the
PUD. Because Ullman is an indispensable party and is op-
posed to a dissolution of the PUD, the master could not have
dissolved the PUD in her absence. We find no error.

■ Appellants next contend the master erred in not find-
ing that the Developer and its president owed a fidu-
ciary duty to appellants because of their superior vot-
ing strength as compared to appellants. The appellants state:

> [they had] a fiduciary duty to manage and maintain the
> common property of the development. As such, Respon-
> dents should have maintained Fairway Lane in a reason-
> able condition until such time as there were sufficient re-
> serves in the Association's accounts from assessments to
> accomplish such repairs. In failing to exercise proper su-
> pervisory and managerial responsibilities in the mainte-
> nance and upkeep of Fairway Lane, the common Grounds
> and villa exteriors and in failing to establish a fund for
> such maintenance, Respondents breached their fiduciary
> duty to Appellants and should be held liable to Appellants
> for the cost of repairing Fairway Lane.

The appellants make two arguments. First, they argue that
because of the Developer's and its president's superior voting
strength, the respondents had a fiduciary obligation to assess
the villa owners at a level necessary to maintain sufficient re-
serves to adequately maintain the common areas. Citing
*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.,*
114 Cal. App. (3d) 783, 171 Cal. Rptr. 334, 343 (Ct. App. 1981),
they also argue that because of their fiduciary relation to the
appellants, these respondents had an obligation to expend
their own funds to maintain the common areas until sufficient
reserves were generated to maintain the areas through
assessments.

Assuming a fiduciary relationship exists between the appellants and respondents because of their superior voting power, it is clear that the respondents have refrained from exercising their superior voting strength to effectuate higher assessments in deference to the wishes of the appellants to keep the assessments low. In a dispute between the directors of a homeowners association and aggrieved homeowners, the conduct of the directors should be judged by the "business judgment rule" and absent a showing of bad faith, dishonesty or incompetence, the judgment of the directors will not be set aside by judicial action. 4 S.C. Juris. *Condominiums* § 42 (1991); *see also Dockside Ass'n, Inc. v. Detyens,* 291 S.C. 214, 352 S.E. (2d) 714 (Ct. App. 1987), *aff'd,* 294 S.C. 86, 362 S.E. (2d) 874 (1987). We cannot say that under the circumstances of this case the respondents violated a fiduciary duty to the appellants by not voting for higher assessments.

The appellants also argue that the Developer had a responsibility to insure that the common areas were in good repair at the time they were conveyed to the Association and that the Association had sufficient funds to maintain the common areas. We find that this argument has merit. As we view the facts in this case, the Association was not effectively organized until 1987, when the deed to the common areas was recorded. This appears to have been the intention of the Developer also.

The question of whether the Developer stood in a fiduciary relationship to the villa owners prior to the time the Association was effectively organized and the common elements were conveyed to it was not specifically discussed or ruled upon by the master.[6] "A confidential or fiduciary relationship exists when one reposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 599, 358 S.E. (2d) 150, 152 (Ct. App. 1987). Courts of equity have been careful to define fiduciary relationships so as not to exclude new cases that may give rise to the relationship. *Id.*

In the case of *Duncan v. Brookview House, Inc.,* 262 S.C.

---

[6] The failure of the master to rule on this issue was raised in the appellants' post-trial motion.

449, 205 S.E. (2d) 707 (1974), our Supreme Court held that the promoters of a corporation are fiduciaries to each other and to the corporation they are creating. *Id.* at 456, 205 S.E. (2d) at 710. Here, we think there is a corollary between the promoters of a corporation and the developers of a PUD. Both are entrusted by interested investors to bring about a viable organization to serve a specific function. Both should be expected to use good judgment and act in utmost good faith to complete the formation of their organizations. *See* Julia J. Young, Comment, *Areas of Dispute in Condominium Law*, 12 Wake Forest L. Rev. 979, 984 (1976) (comment to Wayne S. Hyatt & James B. Rhoads, *Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations*, 12 Wake Forest L. Rev. 915 (1976)).

While the evidence shows the Developer provided some maintenance of the common areas at its own expense until it belatedly organized the Association, there is evidence that the common areas were substandard at the time the Developer turned them over to the Association. There is also some evidence the Developer seized the opportunity in 1987 to "unload" the common areas on the Association without a plan to establish a reserve or a plan to fund the Association until such time as assessments were adequate to cover maintenance expenses. It seems unfair to the villa owners for the Developer to burden them with substandard or deteriorated common areas that required an immediate expenditure of funds to bring them up to standard without a plan or a reserve fund to cover the expenditures. *See Orange Grove Terrace Owners Ass'n v. Bryant Properties, Inc.*, 176 Cal. App. (3d) 1217, 222 Cal. Rptr. 523 (Ct. App. 1986); *see also Richard Gill Co. v. Jackson's Landing Owners' Ass'n*, 758 S.W. (2d) 921 (Tex. App. 1988) (fiduciary relationship established between condominium developer and condominium association because developer assumed responsibility for managing condominium until owners' association could be formed).

We hold that the trial court must consider this issue as a prerequisite to determining the liability of the Developer. Accordingly, the issue is remanded to the trial court for consideration. The trial court is authorized to consider additional evidence. On remand, the trial court should be certain that any liability imposed upon the Developer is limited to the costs

that would have been required in 1987 to bring the common areas up to standard. The court should take into account the fact the villa owners apparently agreed at one point to be responsible for the exterior maintenance of their villas.

Appellants also claim error in the refusal of the trial court to permit testimony of misrepresentations made by the Developer to the villa owners. The master excluded this testimony on the premise that the parol evidence rule prohibited the testimony. We view the appellants' contention as claiming the misrepresentations induced them to enter into their contracts to purchase. The testimony regarding misrepresentations was therefore proffered to address the failure of consideration and/or to establish a basis for nullifying the Declarations. Thus, the master erred in excluding the evidence. *See Alexander v. Kerhulas*, 151 S.C. 354, 149 S.E. 12 (1929) (concurring opinion); James F. Dreher & Jon P. Thames, *A Guide to Evidence Law in South Carolina* 79 (1979).

A review of the record convinces us the exclusion was harmless error. The proffered testimony was excluded while appellant Goddard testified. We conclude from the record that Goddard's testimony would have concerned the number of units the Developer promised to build in the PUD and whether the road was to be maintained by the county. The Developer testified he planned to build 93 villas but never promised to build a certain number. He also testified he never promised that the road would be maintained by the county. Two other appellants testified that while they thought approximately 90 villas would be built, the Developer did not expressly represent that fact or that the road would be maintained by the county. The Developer acknowledged its sales agents represented to prospective purchasers that approximately 90 villas were planned. We find no reversible error in the exclusion. Goddard's testimony would have been cumulative. However, the trial court should reconsider his ruling if the same evidence is offered on remand.

Finally, appellants argue that because the main purpose of their complaint was to recover monetary damages based on fraud and misrepresentation, they were entitled to a jury trial on all issues as a matter of right. We are not persuaded by this argument. The order of reference unmis-

takably refers only equitable issues to the master. Further, appellants' counsel made it clear during the master's hearing that the fraud and misrepresentation they sought to prove addressed failure of consideration and was the reason the PUD should be dissolved. Additionally, an order of reference which deprives a party of a mode of trial to which he is entitled as a matter of right is immediately appealable. *C&S Real Estate Services, Inc. v. Massengale*, 290 S.C. 299, 300, 350 S.E. (2d) 191, 192 (1986). Appellants' failure to immediately appeal the issue leaves it unpreserved for our review. *Id.*

We have reviewed the other arguments made by the appellants for reversal of the master's order and find them to be manifestly without merit. They are summarily dismissed pursuant to S.C. Code Ann. § 14-8-250 (Supp. 1991) and Rule 220(b)(2), SCACR.

Affirmed in part, reversed in part and remanded.

BELL, J., and BAROODY, Acting J., concur.

