MAERCKER POINT VILLAS CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. GREGORY SZYMSKI et al., Defendants-Appellants.

Second District    No. 2—95—0132

Opinion filed September 21, 1995.

John C. North and Amy K. Belair, both of Borla, North & Associates, P.C., of Downers Grove, for appellants.

Dennis R. Ainger and Jeffry J. Knuckles, both of Knuckles & Jagel, of Naperville, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

This appeal arises out of a lawsuit filed on July 27, 1992, by plaintiff, Maercker Point Villas Condominium Association, against developer, Parkway Bank Trust Company, as trustee under trust No. 2473, and defendant, Gregory Szymski, for breach of fiduciary duty. Defendant admits that he is the beneficiary of the trust, is the specific individual entitled to the benefits of the trust, and was the specific person who contracted, constructed, advertised and sold the various units comprising the condominium association and its garage units.

Plaintiff contends that defendant breached his fiduciary duty to plaintiff by failing properly to fund reserves and pay a proportionate share of expenses during the time defendant controlled plaintiff's board of directors (the Board). Plaintiff relies on its declaration of condominium (Declaration), which states that "[t]he Board shall establish and maintain a reasonable reserve for contingencies and replacements." The Declaration also requires the Board to maintain, repair, and replace common elements. The structures in the condominium association include a three-story, 48-unit condominium building, a garage building with space for over 30 cars, and a farmhouse. At the time defendant relinquished control of the Board, there was only $7,000 in plaintiff's account. Plaintiff contends that as a result it

was left underfunded for certain contingencies, repairs, and replacement projects.

On November 23, 1993, the trial court entered a partial summary judgment pursuant to section 2—1005(d) of the Illinois Code of Civil Procedure (see 735 ILCS 5/2—1005(d) (West 1992)), finding that defendant owed both a statutory duty and a common-law duty to "pay into the association's reserve fund, [his] share of the common elements costs and reserves for depreciate [*sic*] on those units that the defendant owns and remain unsold." The trial court also determined that defendant breached his duty. The matter was continued for trial on the issue of damages.

On June 15, 1994, defendant sought leave to file a third-party complaint. He alleged that plaintiff was claiming as damages the period of time from the recording of the Declaration until the time defendant turned over control of the Board to the unit owners. Defendant alleged that other persons who had bought units prior to the turnover were obligated to pay that unit's *pro rata* share for assessments and reserves. Consequently, if defendant was required to pay increased assessments on those units, the unit owners would be unjustly enriched. The trial court, *sua sponte*, treated the motion as a motion *in limine* and limited plaintiff's recovery "to the periods of ownership of the units while the defendant held title to them and before they were sold to others." Defendant made a motion *in limine* seeking to bar certain testimony of plaintiff's expert (Leon). The trial court denied defendant's motion, holding that "shortcomings in the source information relied upon [by] the expert witness goes to the weight of his testimony and not its admissibility."

On November 7, 1994, after a bench trial, plaintiff was awarded the sum of $70,965.56 plus costs. On December 28, 1994, defendant's post-trial motion was denied. Defendant has filed his timely notice of appeal from the trial court's orders of November 23, 1993, and November 7, 1994. No questions are raised on the pleadings.

On appeal, defendant contends that the trial court erred when it: (1) determined defendant had a common-law duty to fund a reserve account for plaintiff; (2) determined defendant's duty to fund a reserve account began when the Declaration was recorded; and (3) admitted plaintiff's expert testimony. We disagree, and we affirm.

Defendant argues that the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 1992)) is purely a statutory creation, and prior to the statutory change of section 9 in 1990, there was no fiduciary duty to fund reserves (Ill. Rev. Stat. 1989, ch. 30, par. 309 (now, as amended, 765 ILCS 605/9 (West 1992))). Defendant further asserts that even after the statutory change, reserves were not required.

Instead, defendant argues that the legislative change only mandated that boards of directors for condominium associations consider the necessity of reserves. Defendant also argues that his common-law duties in his relationship with plaintiff apply only to the construction and sale of the condominiums. Defendant concludes that the trial court erred in ruling that, as a matter of law, he had a duty to fund reserves prior to July 1, 1990.

▪ We are convinced by the application of a simple, straightforward definition of a fiduciary relationship to the facts in this case that defendant stood in such a relationship to plaintiff. "A fiduciary or confidential relationship exists where, by reason of friendship, agency, or business association and experience, trust and confidence are reposed by one person in another who, as a result, gains an influence and superiority over him." (*Melish v. Vogel* (1975), 35 Ill. App. 3d 125, 136.) Once such a relationship exists in a corporate setting, a fiduciary has the duty "to act with utmost good faith and loyalty in managing the corporation" and is prohibited from enhancing his or her "own personal interests at the expense of corporate interests." (*Coduti v. Hellwig* (1984), 127 Ill. App. 3d 279, 292.) Furthermore, a fiduciary "may not hinder or defeat the ability of the corporation to continue the business for which it was developed." (*Smith-Shrader Co. v. Smith* (1985), 136 Ill. App. 3d 571, 577.) The trial court properly found that defendant had a fiduciary relationship with plaintiff.

▪ It will be helpful to review the law applicable to condominiums. "[C]ondominiums are creatures of statute. As such, condominiums are necessarily subject to the control and regulation of the legislature. Under these circumstances, the legislature is given broad discretion in its regulatory efforts, especially in fashioning remedies necessary to protect the interests of those persons involved." (*S&D Service, Inc. v. 915-925 W. Schubert Condominium Association* (1985), 132 Ill. App. 3d 1019, 1024-25.) During the period of time relevant to this case, Illinois law provided:

> "It shall be the duty of each unit owner to pay his proportionate share of the common expenses. It shall be the duty of the developer to pay a proportionate share of the common expenses for each unit which has not been sold by such developer. The proportionate share shall be in the same ratio as his percentage of ownership in the common elements set forth in the declaration." (765 ILCS 605/9(a) (West 1992).)

Common expenses were defined as "the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed by the Board of Managers of the Unit Owner's Association." 765 ILCS 605/2(m) (West 1992).

The historical and practice notes (Notes) to section 9 indicate that "[t]he legislative history of the Act shows that this language [(the second sentence of subsection 9(a))] either codified or clarified preexisting law, rather than creating a new legal obligation." (765 ILCS Ann. 605/9, Historical & Practice Notes, at 44 (Smith-Hurd 1993).) The Notes go on to state that, when

> "[r]ead together, the 1978 amendment adding the definition of Section 2(m) of the Act and the amendment to subsection 9(a) make it clear that each unit owner must pay his proportionate share of actual and proposed expenses affecting the property, including reserves. The Committee Report makes it clear that the General Assembly intended to include developers among the class of unit owners obliged to pay their share of common expenses before the enactment of the 1982 amendment to Section 9(a)." 765 ILCS Ann. 605/9, Historical & Practice Notes, at 45 (Smith-Hurd 1993).

The Notes are not binding, but they may be used as persuasive authority. (See *Litvak v. 155 Harbor Drive Condominium Association, Inc.* (1993), 244 Ill. App. 3d 220, 224.) The Notes, as well as the words of the statute, demonstrate that the legislature recognized the importance of reserve funds to a condominium association and the developer's responsibility to provide for these funds by paying an appropriate share of common expenses.

■ The facts here establish that $7,000 is an unreasonably small amount of money in relation to the needs of the association. Defendant should have known that plaintiff's obligations could not be met without his contribution of reasonable reserve funds. Furthermore, as a fiduciary, defendant had the duty not to hinder "the ability of the corporation to continue the business for which it was developed." (*Smith-Shrader*, 136 Ill. App. 3d at 577.) By leaving plaintiff underfunded, defendant violated his fiduciary duty to plaintiff. After careful review of the Notes, the case law, and the relevant statutory provisions, we determine that the trial court did not err, as a matter of law, when it concluded that defendant owed a duty to fund reserves for plaintiff.

We must now consider when this duty arose. Defendant argues that the trial court erred when it determined that defendant's duty to fund reserves began when the Declaration was recorded.

The Notes state:

> "While the Act unquestionably provides that developers must pay assessments like other unit owners, neither the Act nor case law sheds any light on when this obligation begins. The most logical starting point would be upon recordation of the declaration

pursuant to Section 3, because Section 6 says: 'Upon compliance with the provisions of Sections 3, 4, and 5 and upon recording of the declaration and plat the property shall become subject to the provisions of this Act...[.]' " 765 ILCS Ann. 605/9, Historical & Practice Notes, at 45 (Smith-Hurd 1993).

The Notes suggest that it is reasonable to determine that a developer's duty to pay assessments begins when the declaration is recorded. We agree and believe that doing so does not place an undue financial burden on the developer. In light of the Notes and our earlier determination that defendant owed a duty to fund reserves for plaintiff, we conclude that the trial court did not err when it determined that this duty began when the Declaration was recorded.

■ Last, defendant argues that the trial court erred when it allowed Leon to testify as to what the reserves should have been. Defendant contends that Leon did not rely on facts or data to render his opinion. Rather, defendant asserts that Leon used someone else's opinion, in the form of a reserve study, to establish what the reserves should have been and then performed mathematical computations to arrive at a per-year requirement for reserves. Defendant argues that he was not provided any protection that the reserve study was accurate or reliable. Defendant also argues that Leon's opinion testimony should not have been admitted because Leon never testified that his opinion was based on a reasonable degree of certainty.

"[I]t is undisputed that even though reports made by others may be substantively inadmissible, an expert may utilize them in forming his opinion as long as experts in the field reasonably rely on such materials." (*People v. Anderson* (1986), 113 Ill. 2d 1, 7; see also *Wilson v. Clark* (1981), 84 Ill. 2d 186, 196 (adopting Rules 703 and 705 of the Federal Rules of Evidence (Fed. Rules Evid. 703, 705) to govern all cases involving expert testimony).) Furthermore:

> "Where the issue was the admission or exclusion of an expert's entire opinion testimony, the Illinois Supreme Court adopted the position that the trial court should liberally allow the expert to determine what materials are reasonably relied upon by those in his field. [Citations.] It is the opponent's responsibility to then challenge the sufficiency or reliability of the basis for the expert's opinion during cross-examination, and the determination of the weight to be given the expert's opinion is left to the finder of fact." (*Lovelace v. Four Lakes Development Co.* (1988), 170 Ill. App. 3d 378, 383-84.)

"The weight to be assigned an expert's opinion depends on the factual basis for that opinion [citation], as an expert's opinion is only as valid as the reasons for it [citation]." *In re Winters* (1994), 255 Ill. App. 3d 605, 609.

The issue in the present case is whether Leon's reliance on the reserve study, which formed the basis of his expert opinion, was reasonable. Leon testified that he relied on the reserve study because a professional engineer (Carstens) had signed it. Leon also testified that "[i]t would be highly unusual that a person would put his professional credentials on the line without having done some review, the review considered necessary by that professional to satisfy himself." Leon went on to testify that he "would expect that a person with [Carstens'] credentials would have exercised due professional care as it related to that report." We agree with the trial court that Leon's reliance on the reserve study was reasonable. We conclude that the trial court did not err when it admitted Leon's testimony.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS and BOWMAN, JJ., concur.