562 S.E.2d 633

CONCERNED DUNES WEST RESIDENTS, INC., Ruthann Epstein, Sue Hensch, Mary Eckbreth, Keith Grybowski, Larry Schellenberger, Jeff Zimmer, Ronald Fulcher, and David Fulton, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

GEORGIA–PACIFIC CORPORATION, Dunes West Property Owners' Association, Inc., and Allan Feker d/b/a U.S. Residential Golf Properties, Inc., a Florida corporation, Defendants,

and

Georgia–Pacific Corporation, Plaintiff,

v.

Allan Feker and Dunes West Residential Golf Properties, Inc., Defendants.

No. 25453.

Supreme Court of South Carolina.

Heard Dec. 13, 2001.

Decided April 22, 2002.

W. Jefferson Leath, Timothy W. Bouch, and G. Hamlin
O'Kelley, III, of Leath, Bouch & Crawford, of Charleston; and
W.H. Bundy, Jr., of Smith, Bundy, Bybee & Barnett, of Mt.

Pleasant, for plaintiff Concerned Dunes West Residents, Inc., and the individually named plaintiffs.

Daniel S. Reinhardt, of Troutman Sanders, L.L.P., and John E. Burgess, of Georgia–Pacific Corporation, both of Atlanta, Georgia; and H. Brewton Hagood, of Rosen, Rosen & Hagood, L.L.C., of Charleston, for defendant/plaintiff Georgia–Pacific Corporation.

G. Trenholm Walker and Lindsay K. Smith–Yancey, of Pratt–Thomas, Epting & Walker, P.A., of Charleston, for defendants Allan Feker and Dunes West Residential Golf Properties, Inc.

John A. Massalon, of Wills & Massalon, L.L.C., of Charleston, for defendant Dunes West Property Owners' Association, Inc.

PER CURIAM.

This Court accepted the following five questions on certification from the United States District Court:

1. If the roads and other common elements transferred to the property owners association on March 20, 1998, were defective at the time of the transfer, what is the extent of Georgia–Pacific Corporation's or any of its subsidiary corporations' liability to the property owners association at this time?

2. If the roads and other common elements transferred to the property owners association on March 20, 1998, were defective at the time of the transfer, what is the extent of Allan Feker doing business as U.S. Residential Golf Properties' and Dunes West Residential Golf Properties' liability to the property owners association at this time?

3. During the period of time that the developer has control of the property owners association what is the developer's obligation to maintain the roads and other common areas of Dunes West?

4. When control of the property owners association passes to the Dunes West property owners, what are Georgia–Pacific Corporation's or any of its subsidiary corpora-

tions' obligations as to the condition of said roads and other common elements at the time of said transfer?

5.  When control of the property owners association passes to the Dunes West property owners, what are Allan Feker doing business as U.S. Residential Golf Properties' and Dunes West Residential Golf Properties' obligations as to the condition of said roads and other common elements at the time of said transfer?

We are confident that the answer we set forth to question 1 will provide the district court with sufficient guidance on the issues before that court and confine this opinion to an examination of that question.

## FACTS

We summarize the district court's findings of fact as follows: A subsidiary of Georgia–Pacific Corporation executed an agreement with Wild Dunes Associates for the purpose of developing a planned unit development ("PUD") located in Charleston County. Pursuant to the agreement, Georgia–Pacific Corporation conveyed 4,325 acres to the developers. In 1991, the developers recorded the declaration of covenants, conditions, and restrictions for the development. All new lots or tracts of land in the PUD were subject to the covenants.

Subsequently, a second wholly-owned subsidiary of Georgia–Pacific Corporation purchased the interest of Wild Dunes Associates in the development venture. The two Georgia–Pacific Corporation subsidiaries continued to develop the residential property.

Eagle Creek Construction Company ("Eagle Creek") constructed the roads and drainage systems in the early phases of the development. Eagle Creek completed construction in 1991. In 1993, the developers discovered defects in the roads constructed by Eagle Creek, and filed a lawsuit against Eagle Creek to recover the costs to repair the roads. While the lawsuit against Eagle Creek was pending, the developers hired engineers to design repair plans for the defective roads. Between 1994 and 1996, the developers spent more than one million-one hundred thousand ($1,100,000) dollars repairing the roads.

After settling its lawsuit against Eagle Creek, the developers learned that significant additional road and drainage repairs were needed within the development.

Only one week after discovering that the roads were in further need of repair, and prior to the completion of any further repairs, the developers entered into an Asset Purchase Agreement for the sale of all remaining undeveloped portions of the property to a buyer named Allan Feker ("Feker").

Prior to consummating the sale of the undeveloped portions of the PUD to Feker, the developers executed a deed conveying the roads and other common areas within the development to the Dunes West Property Owners Association ("POA").[1] Pursuant to the recorded covenants, the POA was responsible for maintaining all common areas within the PUD.

Feker assigned his rights under the Asset Purchase Agreement to his corporation, Dunes West Residential Golf Properties, Inc., ("DWRGP"). DWRGP took title to the undeveloped property and became the new developer of the PUD. DWRGP has continued to develop Dunes West and sell lots and tracts of land.

In litigation before the district court, the Concerned Dunes West Residents are proceeding in a derivative capacity on behalf of the POA and seeking to recover the cost to repair the roads and other common areas from Georgia–Pacific Corporation as the previous developer, and Allan Feker doing business as U.S. Residential Golf Properties as successor developer.

## ISSUE

If the roads and other common elements transferred to the POA on March 20, 1998, were defective at the time of the transfer, what is the extent of Georgia–Pacific Corporation's

---

1. The POA consists of all property owners within the PUD. The owners are charged an annual assessment to be used to maintain the common areas. The recorded covenants grant the developers *de facto* control over the POA, and provide that any property owned by the developers is exempt from assessments. However, if assessments against property owners are insufficient to maintain the roads and other common areas, the covenants require the developers to make up any shortfall. The developers' liability is limited to the assessments generated by property owned by the developers were this property subject to assessments.

or any of its subsidiary corporations' liability to the POA at this time?

## ANALYSIS

■ In *Goddard v. Fairways Dev. Gen. Partn.*, 310 S.C. 408, 426 S.E.2d 828 (Ct.App.1993), the Court of Appeals held that the developer of a planned unit development ("PUD") owes a fiduciary duty to the property owners association and its members, much like that owed by promoters of a corporation to investors. As such, the developer has a responsibility to insure that the common areas are in good repair at the time they are conveyed to the property owners association or to provide the association with funds sufficient to effectuate any needed repairs to those areas. *Id.* at 414, 426 S.E.2d at 832.

The facts of *Goddard* are similar to those in the instant dispute. In *Goddard,* Fairways Development General Partnership began developing a PUD, with plans to build approximately 90 units. The PUD was governed by recorded covenants and restrictions. The covenants called for the formation of the Fairway Villas Homeowners Association, with mandatory membership for all unit owners. The homeowners association owned the common areas within the development, and was responsible for maintaining these areas. Funding for the homeowners association was accomplished through assessments against each unit. The homeowners association was organized to grant the developer control over the association until nearly all the lots within the PUD had been developed and sold. Further, the developer had the unilateral ability to determine assessments against individual owners while the developer was not required to pay assessments.

After selling five residential units, the developer transferred ownership of the common areas to the homeowners association. Practically, the five property owners were burdened with maintaining all common areas. After it became apparent that the assessments generated by these five property owners were insufficient to maintain the common areas, the individual property owners brought suit against the developer and the homeowners association seeking relief on a number of grounds. The homeowners argued, *inter alia,* that the developer had a responsibility to insure that the common areas

were in good repair at the time they were conveyed to the homeowners association and that the association had sufficient funds to maintain the common areas. The Court of Appeals stated:

In the case of *Duncan v. Brookview House, Inc.*, 262 S.C. 449, 205 S.E.2d 707 (1974), our Supreme Court held that the promoters of a corporation are fiduciaries to each other and to the corporation they are creating. *Id.* at 456, 205 S.E.2d at 710. Here, we think there is a corollary between the promoters of a corporation and the developers of a PUD. Both are entrusted by interested investors to bring about a viable organization to serve a specific function. Both should be expected to use good judgment and act in utmost good faith to complete the formation of their organizations.

While the evidence shows the Developer provided some maintenance of the common areas at its own expense until it belatedly organized the Association, there is evidence that the common areas were substandard at the time the Developer turned them over to the Association. There is also some evidence the Developer seized the opportunity in 1987 to "unload" the common areas on the Association without a plan to establish a reserve or a plan to fund the Association until such time as assessments were adequate to cover maintenance expenses. It seems unfair to the villa owners for the Developer to burden them with substandard or deteriorated common areas that required an immediate expenditure of funds to bring them up to standard without a plan or a reserve fund to cover the expenditures.

*Goddard,* at 414–16, 426 S.E.2d at 832–33 (internal citations omitted).[2]

The district court in this case was aware of *Goddard,* but expressed doubt as to whether *Goddard* accurately reflected the law of this state. We hold today that it does: The developer of a PUD owes a duty to the POA to turn over common areas that are not substandard and that are in good repair. Failure to do so subjects the developer to liability for bringing the common areas up to standard.[3]

---

**2.** Neither party in *Goddard* petitioned this Court for writ of certiorari.

**3.** At least one court has agreed with this premise and cited *Goddard* approvingly. *See Chesus v. Watts,* 967 S.W.2d 97 (Mo.App.1998).

The appellate courts of Illinois have reached a similar conclusion when addressing condominium developers' obligations to property owners associations taxed with maintaining common areas. For example, in *Maercker Point Villas Condo. Assoc. v. Szymski,* 275 Ill.App.3d 481, 211 Ill.Dec. 809, 655 N.E.2d 1192 (1995), the court held that a condominium developer stood in a fiduciary relationship to the owners association. As a fiduciary, the developer "had the duty not to hinder 'the ability of the corporation [i.e., the owners association] to continue the business for which it was developed.'" *Id.* at 1194. The court found that by leaving the association underfunded at the time the developer relinquished control of the association's board of directors, the developer violated his fiduciary duty. *See also Board of Managers of Weathersfield Condo. Assoc. v. Schaumburg Ltd. Part.,* 307 Ill.App.3d 614, 240 Ill.Dec. 336, 717 N.E.2d 429 (1999) (developer of condominium had fiduciary duty to adequately fund owners association for maintenance/repair of common areas).[4]

While *Maercker* addressed condominium developers' duties to condominium owners associations, the Illinois Court of Appeals, relying on *Maercker,* found that a fiduciary duty to adequately fund reserves likewise runs from the developer of a townhome project to the townhome owners association. *Seven Bridges Courts Assoc. v. Seven Bridges Development, Inc.,* 306 Ill.App.3d 697, 239 Ill.Dec. 682, 714 N.E.2d 601 (1999). However, the public policy of Illinois does not preclude the developer from contractually limiting its fiduciary duty to adequately fund the association with a reserve account by including unambiguous language to that effect in the declaration of covenants and restrictions. *Id.* at 606.

Other courts have recognized a POA's right to maintain a cause of action against the developer for defects in the con-

---

**4.** Illinois law provides by statute that a condominium developer must "pay a proportionate share of the common expenses for each unit which has not been sold by such developer. The proportionate share shall be in the same ratio as the percentage of ownership in the common elements set forth in the Declaration." 765 Ill. Comp. Stat. § 605/9(a) (1992). The court in *Maercker, supra,* indicated this section did not create new legal obligations, but merely codified or clarified preexisting law. *See Maercker,* 211 Ill.Dec. 809, 655 N.E.2d at 1194; *see also Board of Managers of Weathersfield Condo. Assoc., supra,* 240 Ill.Dec. 336, 717 N.E.2d at 434.

struction of common areas. *See e.g., Strathmore Gate–East at Lake St. George Homeowners' Assoc., Inc. v. Levitt Homes, Inc.,* 537 So.2d 657 (Fla.App. 2 Dist.1989) (homeowners association, as owner of common areas taxed with the burden of maintaining the common areas, could maintain a cause of action against developer for defects in the construction of the common areas).

In *Orange Grove Terrace Owners Assoc. v. Bryant Properties, Inc.,* 176 Cal.App.3d 1217, 222 Cal.Rptr. 523 (1986), the issue before the court was "whether a homeowners association has a cause of action for damages to the common areas of a condominium project caused by negligent acts or omissions of the developer occurring prior to formal organization of the association." *Id.* at 524. Finding for the plaintiff/homeowners association, the court observed:

[t]he record shows that the defendants' work was substantially accomplished prior to formal organization of the homeowners' association provided for in the covenants, conditions and restrictions ... and, therefore, before the Association assumed its management duties with respect to the common areas. The timing of the Association's organization was a matter wholly within the control of the defendants, who could readily foresee that the Association, which was obligated by the covenants and conditions promulgated by defendants to maintain and repair the common areas, and to assess the condominium owners sums sufficient for that purpose, would be damaged by an injury to the common areas caused by the defendants' negligence in undertaking repairs in the course of the condominium conversion. A developer may not make decisions for the Association that benefit its own interest at the expense of the association and its members.

*Id.* at 526 (citations omitted).

While the cases cited above have employed different means,[5] they accomplish the same end: That is, developers are held

---

5. For example, *Goddard* and two of the Illinois cases hold that the developer is a fiduciary to the property owners association, and as such must establish adequate reserves to perform its obligations under the covenants. Courts in Florida and California permitted property owners associations to maintain causes of action against developers for the developers' negligence in constructing or repairing the common areas;

responsible for the condition of the common areas at the time these areas are deeded to the POA. If these areas are not in good repair at the time of conveyance, the developer is liable for the costs of repairs. *Goddard* is consistent with this result.

Under the facts certified to this Court, *Goddard* required the developer to ensure that the roads and other common areas were in good repair at the time ownership of the common areas was transferred to the POA, or, in the alternative, to provide the POA with sufficient funds to bring these common areas up to standard as of the date of transfer. That is to say, the developer has a fiduciary duty to the POA to transfer common areas that are in good repair; if the developer transfers substandard common areas, the developer must, at the time of transfer, provide the POA with the funds necessary to bring the common areas up to a standard of reasonably good repair. The developer who breaches this duty, by transferring common areas that are not in reasonably good repair and without the funds necessary to bring the common areas up to standard, is liable to the POA for all damages proximately flowing from the breach, including damages for the continued deterioration of these areas.

*REMAINING QUESTIONS*

Question 3 asks:

During the period of time that the developer has control of the property owners association what is the developer's obligation to maintain the roads and other common areas of Dunes West?

■ Pursuant to the Declaration of Covenants, Conditions and Restrictions for Dunes West, recorded on September 18, 1989, maintenance of the roads and common areas within Dunes West is the sole responsibility of the POA. Funding for such maintenance is accomplished through annual and special assessments, in an amount determined by the POA, levied against property owners. Lots owned by the developer are exempt from paying assessments. However, during the period of time the developer exerts *de facto* control over the POA, the developer is responsible for making up all shortfalls

the California court allowed the association to pursue damages arising before the association's formation.

in the POA's operating budget up to an amount equal to the assessments which would have been generated by the property owned by the developer were this property subject to assessments.

Thus, question 3 is answered by reference to the Declaration of Covenants, Conditions and Restrictions for Dunes West. Assuming the district court questions the validity and enforceability of the Declaration of Covenants, Conditions and Restrictions for Dunes West against the POA or individual property owners, we decline to express an opinion on that issue because it does not involve a novel question of state law.

■ As to question 2, any liability of Allan Feker, U.S. Residential Golf Properties, or DWRGP arising from the condition of the common areas on the date the common areas were transferred to the POA arises by operation of contracts between the original developers and Allan Feker, or U.S. Residential Golf Properties, or DWRGP. The issue involves no novel question of law, and we therefore decline to answer question 2.

■ Questions 4 and 5 assume a dispute which may never arise. We decline to answer those questions. *See Sangamo Weston, Inc. v. National Sur. Corp.*, 307 S.C. 143, 414 S.E.2d 127 (1992) (even when answering questions on certification, this Court will not issue advisory opinions nor alter precedent based on questions presented in the abstract).

CERTIFIED QUESTION ANSWERED.

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.