M. KATHRYN KELLEY *et al.*, Plaintiffs-Appellants, *v.* ASTOR INVESTORS, INC., *et al.*, Defendants-Appellees.

Second District   Nos. 83—497, 83—524 cons.

Opinion filed April 13, 1984.

Jeffrey Lawrence, of Rudd & Associates, of Schaumburg, for appellants.

William D. Heinz and Gail A. Niemann, both of Jenner & Block, of Chicago, for appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiffs, original purchasers and current owners of units in a condominium conversion project of an apartment building complex called "Westbrook West," filed a four-count complaint asserting various claims for damages arising from leaking roofs and other structural defects in the common elements of the project. Among the named defendants were Astor Investors, Inc., the developer, and Marshall Abraham, Larry Abraham and Howard Abraham, officers and directors of the defendant corporation. Defendants filed a motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619 (formerly sections 45 and 48 of the Civil Practice Act)) for the entry of an order dismissing the individual defendants and dismissing counts I

and III of the complaint. The trial court entered its order on March 22, 1983, and plaintiffs have appealed from the portions of that order which dismissed with prejudice the individual defendants from count II, and which granted the motion of Astor Investors, Inc., requiring plaintiffs prove wilful misconduct in their count II claim. Plaintiffs have also appealed the dismissal of their count III with prejudice.

In count III, plaintiffs sought to state a cause of action upon the theory of implied warranty of habitability. While plaintiffs recognize that the doctrine has not heretofore been applied in Illinois to situations involving the conversion of an existing apartment complex into condominium units, they contend that the doctrine should be so applied. Plaintiffs cite the case of *Towers Tenant Association, Inc. v. Towers Limited Partnership* (D.D.C. 1983), 563 F. Supp. 566, in support of their position. In *Towers*, the court did apply the doctrine of implied warranty of habitability to the conversion of an existing apartment building to condominium ownership. In that case, the plaintiffs alleged that, as part of its development and renovation of the Towers, defendant had undertaken extensive rehabilitative construction, and latent defects in this new construction became the basis for plaintiff's complaint. Under those circumstances, the court perceived no meaningful difference between a newly constructed apartment building and an old building that had been significantly refurbished and reconstructed for the purpose of imposing liability for defective conditions. The court went on to say that while defendants may or may not be liable for conditions that preexisted their involvement with Towers, they are certainly responsible for the quality and results of the work they in fact undertook. 563 F. Supp. 566, 575.

We recognize that there is considerable merit in the contention that, where extensive reconstruction has been undertaken in rehabilitating an older building as part of the process of converting the ownership to condominiums, the doctrine of implied warranty of habitability should be applied to defects arising out of that new construction. We do not make that decision in this case, however, since we agree in the present case with the trial court that the facts well pleaded in the plaintiffs' complaint, which we accept as true, do not establish that any significant refurbishing or renovation was undertaken by the defendant corporation as part of the condominium conversion. As the trial court pointed out in its opinion letter and according to the factual allegations of plaintiffs' complaint, the conversion activities consisted of declaring the rental units to be condominiums and offering them to the residents who were occupying them as well as to the public at large. While the defendant Astor Investors, Inc.,

made many false promises and misrepresentations in the spring of 1979 that they would repair roof leaks, make engineering studies to determine if structural repairs were necessary, and represented that repairs to road and landscaping would be made, there are no facts set forth in the complaint that would have established that the defendants actually undertook any extensive refurbishing or renovation of the premises, or that the defects of which plaintiffs complain arose from new construction in connection with such refurbishing or renovation. Absent such extensive refurbishing and renovation, the reasons for applying the doctrine of implied warranty of habitability to the conversion of existing structures into condominiums do not exist. Furthermore, in their complaint, plaintiffs appear to be complaining about roof leaks and defects of which they were advised in the spring of 1979 and which defendants, contrary to their promises, simply failed to repair. Such defects cannot be considered latent ones; consequently, even if defendants had undertaken major renovations, plaintiffs could not recover under the implied warranty of habitability for these defects because that doctrine applies only to latent defects. (See *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 40.) We agree with the trial court that under the facts well pleaded in plaintiffs' complaint the doctrine of implied warranty of habitability should not be applied.

We also agree that the trial court properly dismissed the individual defendants as parties to count II of the complaint. In count II, plaintiffs attempt to assert a claim for breach of trust against the individual defendants as members of the board of directors of Westbrook West Condominium Association. Under the terms of the declaration of condominium, the directors had the responsibility for the operation, care, upkeep, maintenance, replacement and improvement of the common elements. Plaintiffs alleged that these individuals served as board members between June 1, 1979, and October 1, 1979, and that the defendants breached their fiduciary duty in their director capacities by certain acts or omissions as set forth in paragraph 27 of count II of the complaint.

However, in their motion to dismiss, defendants filed an uncontested affidavit with supporting documents which established that the certificate of incorporation of Westbrook West Condominium was issued on October 12, 1979, and at the first meeting of the corporation held on October 15, defendants submitted their resignations as directors effective immediately. For the purposes of ruling on the motion to dismiss, the trial court was required to accept as factual that the Abrahams had served as board members for the three-day period

between the date of incorporation and the date of the first meeting of Westbrook West Condominium Association. While the plaintiffs correctly cite authority which establishes that the initial board of directors elected by the corporate developer has a common law fiduciary duty to the association and a breach of that duty subjects each or all of them to individual liability (see *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981), 114 Cal. App. 3d 783, 171 Cal. Rptr. 334), the defendants urge that their three-day term as nominal members of the board of directors is insufficient, as a matter of law, for holding them liable under such a fiduciary duty for actions taken prior to their appointments. In Illinois, the officers, and directors of a not-for-profit organization stand in a fiduciary relationship to the members of the association (*Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 533); however, individual liability does not attach absent sufficient evidence of active participation (see *National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703) or either substantial control over the corporation or disregard of corporate formalities (see *Macaluso v. Jenkins* (1981), 95 Ill. App. 3d 461). We agree with the defendants that the Abrahams' three-day stint as directors of the Westbrook West Condominium Association was not a period of mismanagement and the alleged wrongdoings of the defendants apparently took place prior to their appointments as directors. The trial court correctly dismissed count II as to the individual defendants.

In reaching our conclusion that the trial court properly dismissed count II as to the defendants, we should add that we have considered plaintiffs' argument made on appeal, that another ground for holding the Abrahams personally liable for the purported breach of trust is based upon their status as officers and directors, not of the association, but of Astor Investors, Inc. We do not need to review the merits, if any, of such a contention because an examination of the allegations of count II makes evident that no such claim or cause of action was pleaded in count II.

The final contention by plaintiffs in this appeal is whether the plaintiffs are obligated to prove wilful misconduct on the part of the defendants in order to prevail on their breach of trust claim in count II. In view of the dismissal of the individual defendants, the narrower issue is whether plaintiffs have to prove wilful misconduct on the part of Astor Investors, Inc.

According to the declaration of condominium, the liability of the association's board of managers was limited to acts or omissions found to constitute wilful misconduct. This provision applies to Astor Investors because the Condominium Property Act charges the condo-

minium developer with the responsibilities and duties of the board of managers until that board is duly elected. (Ill. Rev. Stat. 1981, ch. 30, par. 318.2.) The plaintiffs maintain that the elected board, and the interim managing developer, owe a fiduciary duty to the condominium association members. (See *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527.) This duty, according to the plaintiffs, imposes an unalterable obligation on Astor to exercise reasonable care and diligence in performing its interim managerial duties. Any attempted exculpation or limitation of liability would create a conflict of interest and be violative of public policy. Plaintiffs also suggest that the legislature has now placed its approval on the common law fiduciary duty recognized in *Wolinsky* by enacting an amendment to the Condominium Property Act. This amendment states:

> "In the performance of their duties, the officers and members of the board are required to exercise, whether appointed by the developer or elected by the unit owners, the care required of a fiduciary of the unit owners." (Ill. Rev. Stat. 1983, ch. 30, par. 318.4, amended effective July 1, 1984.)

The plaintiffs conclude that both judicial opinion and legislative directive compel this court to strike the exculpatory bylaw in issue.

While plaintiffs argument that Illinois law recognizes a fiduciary relationship between an interim condominium board of managers and the condominium association members may be meritorious, there is no controlling precedent for their conclusion that the scope of such a fiduciary duty cannot be limited by the association bylaws. As a general proposition, trust or contractual instruments containing an exculpatory clause for simple negligence are valid unless they violate public policy, involve one of a limited number of semipublic relationships (*e.g.*, common carriers) or result from overreaching or abuse of a fiduciary relationship. See *Browning v. Fidelity Trust Co.* (3d Cir. 1918), 250 F. 321, 324-25; Restatement (Second) of Trusts sec. 222 (1959); Bogert, Trusts & Trustees sec. 542 (1978); see also *W.H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 32; *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 417-18.

■ We find nothing in the instant clause which would either violate our State's established public policy or evidence unfair overreaching by Astor Investors. Public policy, while not precisely defined, is located by reference to the State constitution, State statute, judicial decisions, and the constant practice of government officials. (*W.H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 38.) A review of the Illinois Condominium Property Act does not indi-

cate any legislative intent to restrict limitation of condominium managerial liabilities. Such legislative silence prevents this court from injecting such a restriction, no matter how beneficial the attempted innovation may be. (*In re Peak* (1978), 59 Ill. App. 3d 548, 551-52; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 504.) Even the 1984 act amendment cited by plaintiffs, while expressly creating a fiduciary relationship between the association members and the board of managers, does not preclude a limitation on managerial liability. The same conclusion can be deduced from a careful reading of the judicial opinion in the *Wolinsky* case cited by plaintiffs. In the absence of any clear public policy mandates, we must consequently decline to invalidate the instant exculpatory provision.

Our conclusion is further supported by the fact that there is no evidence of undue overreaching by Astor in fulfilling its fiduciary duties. The plaintiffs openly and voluntarily entered into the Westbrook West Condominium Association and they impliedly acquiesced in the bylaws drafted prior to the association's incorporation. We have already concluded that there is no inherent impropriety in an elected board of managers' reliance upon a limited exculpatory clause, and we find no reason for disallowing the corporate-developer's use of a similar provision. The public policy favoring freedom of contract prevails over any conflicting policies in the instant case (see *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill. 2d 68; *Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682; *Simmons v. Columbus Venetian Stevens Buildings* (1958), 20 Ill. App. 2d 1), and the trial court was consequently correct in upholding the clause at issue.

Those portions of the trial court's order of March 22, 1983, from which plaintiff has brought this appeal are affirmed.

Affirmed.

HOPF and NASH, JJ., concur.