(No. 60159.—

M. KATHRYN KELLEY *et al.*, Appellants, v. ASTOR INVESTORS, INC., *et al.*, Appellees.

*Opinion filed May 24, 1985.*

Donnie Rudd, Jeffrey Lawrence, and Michael C. Kim, of Rudd & Associates, of Schaumburg, for appellants.

William D. Heinz and Susan E. Spangler, of Jenner & Block, of Chicago, for appellees.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The plaintiffs, original purchasers and current owners of units in a condominium conversion project known as "Westbrook West," filed a four-count complaint in the circuit court of Du Page County against defendants, Astor Investors, Inc. (Astor), and Marshall Abraham, Larry Abraham and Howard Abraham, as officers and directors of the defendant corporation. In their complaint, the plaintiffs asserted that their alleged damages were caused by leaking roofs and other structural defects in the common elements of the project. Count I alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). Count II alleged a breach of trust by Astor and the Abrahams as individuals. Count III sought to state a cause of action for a breach of the implied warranty of habitability. Count IV alleged a breach of contract. The defendants filed a motion to dismiss counts I and III of the complaint and for entry of an order dismissing the

individual defendants from count II pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619). On March 22, 1983, the circuit court entered an order dismissing count I with leave to amend; dismissing count II with prejudice as to the individually named defendants and requiring that the plaintiffs prove wilful misconduct in regards to Astor as to count II; and dismissing count III with prejudice. The dismissal of count I with leave to amend was not appealed in the appellate court or in this court. However, the plaintiffs did appeal the circuit court's order relating to counts II and III. The appellate court affirmed the circuit court's order as to counts II and III. 123 Ill. App. 3d 593.

As to count II, the appellate court held that the individually named defendants were properly dismissed because they had only served as board members for a three-day period and individual liability does not attach absent sufficient evidence of active participation or substantial control over the corporation or disregard of corporate formalities. The appellate court also held that "the Abrahams' three-day stint as directors of the Westbrook West Condominium Association was not a period of mismanagement and the alleged wrongdoings of the defendants apparently took place prior to their appointments as directors." 123 Ill. App. 3d 593, 597.

In addition, the appellate court held that under count II the plaintiffs would have to prove wilful misconduct on the part of Astor. The appellate court reasoned that, since the declaration of condominium limited the liability of the association's *elected* board of managers to acts or omissions found to constitute wilful misconduct, Astor, as the interim board of managers, should also be limited in liability to acts or omissions found to constitute wilful misconduct.

As to count III, the count for an alleged breach of the

implied warranty of habitability, the appellate court held that count was properly dismissed, because the implied warranty of habitability should not be extended to a condominium-conversion project when Astor had not undertaken any significant refurbishing or renovations and where the defects were not latent and did not arise out of that new construction.

The plaintiffs raise two issues: (1) whether they should be required to prove wilful misconduct on the part of Astor under count II of their complaint; and (2) whether count III, for an alleged breach of the implied warranty of habitability, should have been dismissed.

The first issue we will address is whether the plaintiffs should be required to prove wilful misconduct on the part of Astor under count II of their complaint for a breach of trust. The plaintiffs' argument centers on article V, section 8, of the Westbrook Condominium Declaration, which provides:

> "*Liability of the Board of Managers.* Neither the members of the Board nor the officers shall be liable to the Owners for any mistake of judgment or for any other acts or omissions of any nature whatsoever as such Board members and officers, *except for any acts and omissions found by a court to constitute willful misconduct in the performance of duty.*" (Emphasis added.)

It is not disputed that the above-quoted section of the declaration of condominium is applicable to Astor, as the interim board of managers, pursuant to the Condominium Property Act, which provides:

> "Until election of the initial board of managers, the *same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the board of managers by this Act and in the declaration and bylaws shall be held and performed by the developer.*" (Emphasis added.) Ill. Rev. Stat. 1981, ch. 30, par. 318.2.

However, the plaintiffs argue that, because Astor was

charged under the Condominium Property Act with the same duties and responsibilities as that of the board of managers until that board was elected, any attempted exculpation or limitation of liability by Astor created a conflict of interest and a violation of public policy and thereby constituted a breach of trust on Astor's part.

The plaintiffs' contention is without merit. The very language of the Condominium Property Act provides that the developer's duties and rights should be no different than the duties and rights of the elected board of managers as specified in the declaration of condominium. We do not believe that the exculpatory clause violates public policy. The plaintiffs have not cited, and we have not found, any attempt by the legislature or judiciary to preclude a limitation on managerial liability. While it is true that the legislature has enacted an amendment to the Condominium Property Act which provides that the "members of the board are required to exercise, whether appointed by the developer or elected by the unit owners, the care required of a fiduciary of the unit owners" (Ill. Rev. Stat. 1983, ch. 30, par. 318.4), there is no controlling precedent for the plaintiffs' contention that the scope of such a fiduciary duty cannot be limited by the declaration of condominium. Therefore, in order for the plaintiffs to prevail against Astor under count II for breach of trust, they must prove wilful misconduct on the part of Astor in performing the duties required of it as the interim board of managers.

The other issue the plaintiffs raise is the dismissal of count III for an alleged breach of the implied warranty of habitability. We agree with the appellate court that count III of the plaintiffs' complaint was properly dismissed. The implied warranty of habitability is not intended to apply to a case, like the instant one, where there was no significant refurbishing or renovation of the buildings and where the defects complained of were

not latent defects.

In *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, this court held that the implied warranty of habitability is included in oral and written contracts governing tenancies of occupants of multiple-unit dwellings and that a breach of the warranty may be asserted in a forcible-detainer action where the decisive issue is whether rent is due and owing. Then, in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, this court addressed the issue of an implied warranty of habitability in the sale of new homes by the builder-vendor. This court reasoned that a vendee of a new home from a builder-vendor has a right to expect that his or her home will be reasonably fit for use as a residence and that a vendee may recover from a builder-vendor under the implied warranty of habitability for latent defects, even if the vendee has inspected the home before signing the contract to buy it. (76 Ill. 2d 31, 40.) In Illinois, the right of a purchaser of a new condominium unit to rely upon the implied warranty of habitability that his or her unit and the common elements are free from latent structural defects has also been established. (See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581; *Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310.) Later, this court, in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, extended the implied warranty of habitability from builder-vendors to subsequent purchasers, but the extension was "limited to latent defects which manifest themselves within a reasonable time after the purchase of the house." (92 Ill. 2d 171, 185.) Although the plaintiffs recognize that the implied warranty of habitability has not previously been applied in Illinois to a situation like the instant one, where there is a conversion of an existing apartment building to condominium units, they cite *Towers Tenant Association, Inc. v. Towers Limited Partnership* (D.D.C. 1983), 563 F. Supp. 566, in support

of their contention that the doctrine should be extended to a condominium conversion project. As the appellate court noted however, in *Towers*, the defendants had undertaken extensive rehabilitative construction and the defects the plaintiffs complained of were defects in this "new" construction. The *Towers* court held: "Under these circumstances, we perceive no meaningful difference between a newly constructed apartment building and an old building that has been significantly refurbished and reconstructed, for purposes of imposing liability for defective conditions." 563 F. Supp. 566, 575.

Certainly, a situation where there has been extensive reconstruction undertaken to convert an apartment building to condominium ownership differs from a situation, like the instant one, where the condominium conversion merely consists of declaring the rental units to be condominiums and offering them for sale to the current residents and the general public. The reasons for applying the doctrine of the implied warranty of habitability do not exist in this case. Although Astor may have made promises to repair roofs that leaked, make structural repairs, and improve roads and landscaping, no new construction or extensive refurbishing took place. Also, the defects complained of by plaintiffs were not latent ("one[s] that cannot be discovered in an ordinarily careful inspection" (*Park v. Sohn* (1982), 89 Ill. 2d 453, 464)), since the plaintiffs at least knew of the defects in their own units when they purchased them and could have discovered the other defects in the common elements in an ordinarily careful inspection. We do not intend to reward the developer, as the plaintiffs maintain, for not performing allegedly promised repairs. However, in this case, there has been no rehabilitation or refurbishing to the converted property, and therefore the doctrine of the implied warranty of habitability is not applicable. Consequently, we agree with both the circuit

and appellate courts that count III of the plaintiffs' complaint was properly dismissed.

For all the foregoing reasons, we affirm the appellate court's affirmance of the circuit court.

*Judgment affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.