La SALLE NATIONAL TRUST, N.A., as Trustee, *et al.*, Plaintiffs-Appellees, v. BOARD OF DIRECTORS OF THE 1100 LAKE SHORE DRIVE CONDOMINIUM *et al.,* Defendant-Appellant.

First District (4th Division) No. 1—95—4064

Opinion filed March 20, 1997.

450

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Anne Scheitlin Johnson, of counsel), for appellant.

George W. Hamman, of Hamman & Benn, of Chicago, for appellees.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Carma McClure wanted to renovate her Lake Shore Drive penthouse condominium. She ran into some problems, not the least of which was the building's condominium board. She sued the board, contending it violated its fiduciary duty to her when it impeded her attempts to rebuild the apartment. That, she said, was constructive fraud.

After all equitable matters were settled, a bench trial was held to determine liability and damages. The trial court ruled in the owner's favor. It awarded damages of $896,609.52. The board appeals. With the exception of parts of the damages finding, we affirm the trial court.

FACTS

The defendant, the Board of Directors of the 1100 Lake Shore Drive Condominium (Board), is charged with directing the operation and management of the 1100 North Lake Shore Drive Condominium Association (Association). The La Salle National Trust is the legal owner of units 39A, 39B, and 40B located at 1100 North Lake Shore Drive, Chicago, Illinois. Plaintiff Carma McClure (McClure) is the beneficial owner of the units. These units comprise the penthouse at 1100 Lake Shore Drive. They always have been sold as one unit. An earlier owner added a roof house on the 41st floor.

McClure filed a complaint in the chancery division of the circuit court of Cook County on September 19, 1992. The complaint originally named two Board members as defendants as well as the Board, but the individual Board members were dismissed. The parties settled all equitable matters. The chancery court transferred the case to the law division for a trial on liability and damages only.

When McClure purchased the penthouse for $1.4 million on March 20, 1991, the unit was not in good condition. She and her husband, James Martin, decided to completely renovate the penthouse. The renovation plans included the construction of a new, expanded roof house and a roof deck.

McClure began the renovation project by demolishing the interior of the penthouse. Her architect for the renovation was the Landahl Group (Landahl).

McClure began the demolition work in 1991. She did not notify the Board. She did not have an appropriate city permit.

The demolition caused several problems. The Board was cited by Chicago because of McClure's failure to obtain a permit. An elevator cab was damaged. There were problems coordinating the contractors.

The alarm system was accidently cut off for part of a day. Yard boxes and dumpsters were removed from the site allegedly in violation of Chicago ordinances. Two other units in the building were allegedly damaged because of the demolition. The Board claimed it incurred legal expenses as a result of these problems.

McClure paid for the damage to the elevator cab.

One of the allegedly damaged units belonged to Elizabeth Rann (Rann). Rann was the president of the association at the time of the demolition. Rann claimed that her apartment suffered $16,552 in damages. McClure paid these damages as part of an agreement with the Board. She maintained during the suit that the damages were not her fault and that the amount was inflated. She claimed she paid the damages in order to speed up construction. McClure presented evidence that Rann was having financial difficulties at the time of the alleged damage.

McClure finished the demolition in July 1991. She provided the Board and the city with a complete set of plans for the rest of the renovation project in October 1991.

Had the Board approved the plans immediately, work could have begun on November 5, 1991. The job would have taken 26 weeks to complete. It would have been completed in May 1992.

On September 24, 1991, the Board passed a resolution that said, "[a]ll expenses incurred by the Board in connection with the modification by a unit owner to his unit or adjacent living [sic] comment [sic] elements shall be assessed to the unit owner. Expenses which will be assessed include, but are not limited to engineering, architectural and attorney fees and the cost of documents, plans, and specifications."

Starting in June 1991, the Board refused to approve McClure's construction unless she agreed to assume responsibility for the roof. McClure offered to pay for one-third of the cost of replacing the main and the machine room roofs if the Board would approve her plans. The machine room roof was not a limited common element.

On March 4, 1992, the Board submitted a proposed agreement to McClure that said she would have to meet certain conditions before it would approve the renovation project. McClure would have to pay Rann for the damage done to her unit. She would have to put a security deposit in escrow to cover future damages. She would have to pay for the expenses ($10,969) the Board incurred in reviewing and approving the renovation plans as required by the September resolution. She would have to agree to maintain, repair, and replace the roof. She would have to comply with Chicago's fire protection regulations. She would have to agree to design the rooftop structure to be

consistent with the overall design of the building. She would have to have a full-time, on-site representative present during construction.

Owners of another unit doing renovations at the same time were also required to sign an agreement. That agreement required the owners to have a full-time, on-site field representative present, required the owners to post a bond, and required the owners to change some of their construction plans. These owners were not required to pay any money other than the escrow or to assume responsibility for a particular part of the building.

Although McClure disagreed with many of the agreement's provisions, she signed it on May 15, 1992, to get the Board's approval for her plans. Once she had its approval, she could get a city permit and begin construction. The Board approved the plans and the city issued a permit. Construction began in May 1992.

In June 1992, the parties became aware that the penthouse was having problems with water infiltration. Other units in the building had similar problems.

The parties disagreed as to what caused the infiltration. The Board maintained the infiltration was caused by problems in the roof. McClure claimed the infiltration was caused by cracks in the sides of the building.

Because of the water infiltration, McClure could not finish the renovation of her apartment in 1992, 1993, or 1994.

The Board required McClure to redesign her proposed roof deck. The Board presented evidence that McClure's original design would have harmed the roof.

The parties entered an agreed order on August 24, 1994. The parties agreed each would pay one half the cost of replacing the main roof. The new roof was installed. The Board agreed to caulk and repair the windows of the penthouse to try to stop the leaks. One of the defendant's witnesses said that he was not aware of further complaints about water intrusion after the roof was replaced. Dennis Kluge, vice-president of Landahl, said the leaking did not stop until the walls were caulked.

The trial court found in favor of McClure. It found that the Board had committed constructive fraud by not cooperating with McClure's renovation project. It awarded her $896,609.52.

OPINION

The trial court's decision was based on count II of McClure's complaint. This count was entitled "Breach of Fiduciary Duty." The Board contends count II cannot support the trial court's findings because:

(1) The condominium declaration provides the Board can be liable to a unit owner only for "any acts or omissions found by a court to constitute gross negligence or fraud." Since there was no claim of gross negligence, and since there were no allegations or evidence of actual fraud, says the Board, there can be no liability;

(2) Count II did not allege any fraud, actual or constructive;

(3) The evidence did not prove any fraud, actual or constructive.

We address each contention.

### THE CONDOMINIUM DECLARATION

■ Condominium boards and board members owe a special duty to apartment owners. The Condominium Property Act provides:

> "In the performance of their duties, the officers and members of the board \*\*\* shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West Supp. 1995).

This fiduciary duty is owed by boards as well as their individual members. The decisions make no distinction between a board and its members when describing fiduciary duty. See *Litvak v. 155 Harbor Drive Condominium Ass'n*, 244 Ill. App. 3d 220, 226, 614 N.E.2d 190 (1993); *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 534, 449 N.E.2d 151 (1983).

The failure of condominium board members to act in a manner reasonably related to their fiduciary duty results in "liability for the Board and its individual members." *Carney v. Donley*, 261 Ill. App. 3d 1002, 1011, 633 N.E.2d 1015 (1994).

The scope of that fiduciary duty can be limited by the declaration. In *Kelley v. Astor Investors, Inc.*, 106 Ill. 2d 505, 509-10, 478 N.E.2d 1346 (1985), an exculpatory clause in the condominium declaration limited board liability to "any acts and omissions found by a court to constitute wilful misconduct in the performance of duty." The court held the scope of the Board's fiduciary duty was limited to wilful misconduct by the Board.

In this case, the relevant part of the declaration of condominium is:

> "Neither the directors, Board, officers of the Association, Trustee, nor Developer shall be personally liable to the Unit Owners for any mistake of judgment or for any other acts or omissions of any nature whatsoever as such directors, Board, officers, Trustee or Developer, *except for any acts or omissions found by a court to constitute gross negligence or fraud."* (Emphasis added.)

The first issue we must decide is whether the limitation of liability to acts or omissions that "constitute gross negligence or fraud" applies to McClure's count II. Gross negligence is not an issue in this

case, but the Board contends the word "fraud" in the exclusion applies to actual fraud, not to the constructive fraud found by the trial court.

■ Condominium declarations are covenants running with the land. *Carney,* 261 Ill. App. 3d at 1008. "The paramount rule for the interpretation of covenants is to expound them so as to give effect to the actual intent of the parties as determined from the whole document construed in connection with the circumstances surrounding its execution." *Amoco Realty Co. v. Montalbano,* 133 Ill. App. 3d 327, 331, 478 N.E.2d 860 (1985).

■ This case concerns a declaration clause that seeks to exculpate the Board and its members and officers from personal liability except in narrow circumstances. Generally, exculpatory clauses "are not favored and are strictly construed and must have clear, explicit, and unequivocal language showing that it was the intent of the parties." *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill. App. 3d 154, 165, 510 N.E.2d 409 (1986).

■ If the Board wanted to limit its liability to actual fraud, it should have said so. Constructive fraud is a well-established doctrine in this state. See *Warner v. Flack,* 278 Ill. 303, 313, 116 N.E. 197 (1917): "[Fraud] is no less fraudulent, either in law or in morals, because it is called constructive fraud."

Constructive fraud and actual fraud differ in kind and nature. Actual fraud is a tort. A breach of fiduciary duty is not. *Kinzer v. City of Chicago,* 128 Ill. 2d 437, 445, 539 N.E.2d 1216 (1989) ("This court *** has regarded breach of fiduciary duty as controlled by the substantive laws of agency, contract [citations], and equity [citation]").

Constructive fraud does not require actual dishonesty or intent to deceive. "In a fiduciary relationship, where there is a breach of a legal or equitable duty, a presumption of fraud arises." *Obermaier v. Obermaier,* 128 Ill. App. 3d 602, 607, 470 N.E.2d 1047 (1984). Also see *Sale v. Allstate Insurance Co.,* 126 Ill. App. 3d 905, 921-22, 467 N.E.2d 1023 (1984).

We find that the word "fraud" in the exculpatory clause includes both actual and constructive fraud. A holding to the contrary would virtually wipe out the Condominium Property Act's creation of a fiduciary duty between the Board and unit owners. If the Board were able to limit itself to actual fraud, there would be no liability for violation of its fiduciary duty. That is so because constructive fraud springs from the breach of a fiduciary duty. *Vermeil v. Jefferson Trust & Savings Bank,* 176 Ill. App. 3d 556, 564, 532 N.E.2d 288 (1988).

## THE ALLEGATIONS IN COUNT II

■ Count II did not use the words "constructive fraud." Instead, it set out various ways the Board knowingly and wilfully breached its fiduciary duty to Mrs. McClure. The allegations were fact-specific and, if believed, established a picture of delay, lack of cooperation, and obstruction.

To state a cause of action based on constructive fraud, "the facts constituting the alleged fraud must be set forth in the complaint." *Pfendler v. Anshe Emet Day School*, 81 Ill. App. 3d 818, 822, 401 N.E.2d 1094 (1980). "The focus of the inquiry is on the nature of the liability and not on the nature of the relief sought." *Armstrong v. Guigler*, 174 Ill. 2d 281, 291, 673 N.E.2d 290 (1996).

Clearly, count II alleges that the Board breached its fiduciary duty to McClure. Where there is a breach of a legal or equitable duty arising out of a fiduciary relationship, a presumption of constructive fraud arises. *Vermeil*, 176 Ill. App. 3d at 564.

It is clear from the record that both sides, as well as the judge, understood they were dealing with a claim of constructive fraud arising from an alleged breach of fiduciary duty. We have found no Illinois decision that requires the use of the words "constructive fraud" in these circumstances. To allow a label to control the result in this case would be exalting form over substance. This is not a case of "proof without pleadings." *Mis v. Mindykowski*, 23 Ill. App. 3d 916, 920, 320 N.E.2d 450 (1974).

We find that the plaintiff adequately pled a constructive fraud.

## THE EVIDENCE CONCERNING CONSTRUCTIVE FRAUD

■ We cannot disturb the judgment of a trial court that has resolved conflicting evidence in a bench trial unless an opposite conclusion is clearly evident. *Cronin v. McCarthy*, 264 Ill. App. 3d 514, 523, 637 N.E.2d 668 (1994).

■ Here, the trial court found:

"The Board breached their fiduciary duty not because they intended to deceive McClure, but rather because of the Board's conduct surrounding all aspects of the construction project and their extreme lack of cooperation. These actions of constructive fraud include, but are not limited to: the demand by the Board that Elizabeth Rann, the President of the Board, be reimbursed for alleged damage to her unit before the Board would approve any construction proposals; closing McClure off from use of her

property when workmen were scheduled to be in the unit; unreasonably delaying approval of construction until McClure paid for Board expenses and signed the May 15, 1992 agreement; failure to issue a consent letter for a city building permit in a timely manner; failure to investigate and repair wall and window leaks in a reasonable and timely manner and requiring that McClure agree to assume full financial responsibility for the roof before such leaks would be repaired."

McClure placed her confidence in the Board, which, by statute, owed her a fiduciary duty. In return, according to the trial court's findings, the Board virtually held her penthouse for ransom. This Board did not "act in good faith with due regard to the interests of the other." *Wolinsky*, 114 Ill. App. 3d at 533.

We believe the record supports the trial court's findings. Further, we agree with the trial court that constructive fraud does not require an intent to deceive or a tendency to deceive. Breach of a fiduciary duty is enough. *Vermeil*, 176 Ill. App. 3d at 564.

We affirm the trial court's finding that the Board was liable under count II of the complaint.

### DAMAGES ISSUES

■ The trial court made several findings concerning damages issues. We will not disturb a trial court's damage findings unless those findings are against the manifest weight of the evidence. *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply*, 159 Ill. App. 3d 834, 845, 512 N.E.2d 1286 (1987). We recognize that absolute certainty concerning the amount of damages is not required to justify recovery where existence of the damages is established. The evidence need only tend to show a basis for computation of damages with a fair degree of probability. *Posner v. Davis*, 76 Ill. App. 3d 638, 645, 395 N.E.2d 133 (1979).

■ We conclude the record supports the trial court's findings that: the Board's obstructive acts and lack of cooperation contributed to substantial delays in construction; damages for loss of use of the penthouse apartment, in the form of fair rental value, were recoverable and were properly proved (see *Nisbit v. Yelnick*, 124 Ill. App. 3d 466, 464 N.E.2d 781 (1984) (loss of use damages recoverable in action for breach of implied warranty of habitability)); and admission of a summary exhibit where a proper foundation is established is not an abuse of discretion. See *Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Co.*, 195 Ill. App. 3d 1036, 1051, 552 N.E.2d 1336 (1990).

Our examination of the record persuades us that certain items should not have been included in the damages award. These are:

(1) The award of $97,651.81 for redesign of the roof deck. The redesign had nothing to do with delay caused by the Board's actions. A roofing expert recommended the redesign because of potential damage to the roof membrane;

(2) A $469.21 charge for consulting relating to fire safety should be vacated. The Board had a legitimate concern about this issue;

(3) Litigation expenses should not have been included in the damages award. See *Qazi v. Ismail*, 50 Ill. App. 3d 271, 272, 364 N.E.2d 595 (1977). While it is apparent that litigation expenses were awarded, we cannot tell from this record just how much of the award included them. The trial court on remand will make that calculation.

CONCLUSION

We affirm the trial court's finding of liability on count II. We affirm the award of damages, with the exception of roofdeck redesign costs, fire safety consulting costs, and litigation costs. We remand this cause to the trial court for proceedings consistent with this opinion.

Affirmed in part, vacated in part and remanded.

CERDA and BURKE, JJ., concur.