SEVEN BRIDGES COURTS ASSOCIATION, Plaintiff-Appellee, v. SEVEN BRIDGES DEVELOPMENT, INC., Defendant-Appellant.

Second District    No. 2—98—0729

Opinion filed July 23, 1999.

Scott M. Day and Rachel K. Robert, both of Day & Robert, P.C., and Robert G. Black, both of Naperville, for appellant.

Jeffry J. Knuckles and Nicolette L. Keough, both of Knuckles & Jagel, of Naperville, for appellee.

JUSTICE GALASSO delivered the opinion of the court:

Plaintiff, Seven Bridges Courts Association, a townhome owners association, filed a one-count complaint against defendant, Seven Bridges Development, Inc. The complaint alleged the following. Plaintiff was an Illinois not-for-profit corporation, organized pursuant to the subject 28-page "Declaration of Covenants, Conditions, Restrictions, Easements, and Party Wall Rights for Seven Bridges Courts As-

sociation" (Declaration) recorded on December 16, 1993. Defendant was the developer of the subject development, which consisted of individual townhome units, individual garage units and common areas. Plaintiff's board of directors was responsible for the collection of assessments and the maintenance of the common areas and facilities. From December 16, 1993, to October 31, 1995, plaintiff's board of directors was controlled by defendant. On October 31, 1995, the unit owners took control of the board. The complaint also alleged that, during the December 16, 1993, to October 31, 1995, period, defendant's officers, in their capacity as board members, owed a fiduciary duty to the unit owners. During this period, defendant breached this duty by under funding or not funding a reserve account; misapplying reserve funds, if any; failing to properly adopt an operating budget; failing to properly invoice monthly assessments; failing to pay its proportionate share of the common expenses in the form of monthly assessments; and/or improperly dispersing funds. The complaint further alleged that, as a result of these acts or omissions, plaintiff suffered damages of "not less than $108,804.57."

In its motion to dismiss, defendant argued that it had neither a statutory nor a common-law duty to fund a reserve account. Thus, it maintained that the case should be dismissed pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1996)). Defendant further maintained that the recorded Declaration clearly disclosed that it would not undertake such obligations. Specifically, defendant pointed to section 4.3(d) of the Declaration, which provides in pertinent part:

"(d) *Assessments on Dwelling Units Under Construction*. With regard to any portions of the Premises upon which Dwelling Units are being constructed or have been completed and title has not been conveyed by Declarant, the assessment respecting any such portion of the Premises shall be limited to the aggregate amount of actual operating expenses from time to time required to be paid with respect to such portion of the Premises provided, however, that in the event Declarant enters into a lease or installment contract for any Dwelling Unit, then Declarant shall be responsible for the payment of assessments on such Dwelling Units on the same basis as any other Owner as provided in section 4.6 hereof. Actual operating expenses shall mean those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Premises and shall not include capital expenditures, amounts to be set aside as a reserve for contingencies or replacements, repair items or inventory items to the extent attributable to subsequent periods."

Defendant based its section 2—619 motion to dismiss (735 ILCS 5/2—619 (West 1996)) on this language.

In denying the section 2—615 motion to dismiss, the trial court relied principally on this court's decision in *Maercker Point Villas Condominium Ass'n v. Szymski*, 275 Ill. App. 3d 481 (1995). Regarding the section 2—619 motion, the trial court denied it, finding that the exculpatory and indemnification provisions in the Declaration did not protect defendant from liability, if plaintiff could prove a breach of fiduciary duty. Defendant moved the trial court to reconsider its decision and, further, to clarify its ruling, *i.e.*, whether defendant could modify its common-law obligations as to funding reserves and paying monthly assessments by the terms of the Declaration.

In its letter of decision regarding the motion to reconsider and clarify, the trial court denied the motion to reconsider without comment. As to the motion for clarification, the trial court wrote, *inter alia*, "It was implicit in the last order that the common law fiduciary duty was not, based on these pleadings, abrogated by the Declaration. We deal with the unilateral conduct of the Developer in the first instance, and the attempt to draft away the common law duties is part and parcel of the breach which is alleged."

Subsequently, the trial court granted defendant's request for a certified interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). However, the trial court certified the question as composed by plaintiff, rather than the question proposed by defendant. Plaintiff's question read:

"May the Developer of a Townhome Association modify or abrogate its fiduciary duty to pay a proportionate share of common expenses for units which it owns by including the following language in the recorded Declaration for the townhome development: With regard to any portions of the Premises upon which Dwelling Units are being constructed or have been completed and title has not yet been conveyed by Declarant, the assessment respecting any such portion of the Premises shall be limited to the aggregate amount of actual operating expenses from time to time required to be paid with respect to such portion of the Premises ***."

We note that the certified question, which we find to be awkwardly written, does not expressly deal with the funding of a capital reserve account. However, it is clear from the record, the briefs, and the oral arguments that the parties view the funding of a reserve account as a principal bone of contention. Accordingly, we will proceed as if the funding of a capital reserve account had been expressly stated in the certified question.

Defendant then filed its application for leave to appeal pursuant to Rule 308, and this court denied the application. Defendant then filed its petition for leave to appeal with the supreme court, which denied

the petition but, in a supervisory order, directed this court to allow the appeal filed pursuant to Rule 308. In accordance with this supervisory order, this court permitted defendant's interlocutory appeal.

■ Initially, the parties argue over the parameters of this court's inquiry into the appeal at bar. Plaintiff maintains that we must address only the certified question on appeal, while defendant contends that an appellate court is not limited to addressing only the certified question but may make any order or grant relief as the case may require. Defendant is essentially correct in asserting that a court of review may go beyond the certified question before it. See, *e.g.*, *First of America Bank-Illinois, N.A. v. Drum*, 295 Ill. App. 3d 205, 211 (1998). However, whether to do so is a matter of the reviewing court's discretion. In the instant appeal, we find it unnecessary to review the issues raised in the section 2—615 motion or the section 2—619 motion.

Initially, we address the issue of whether *Maercker Point Villas Condominium Ass'n v. Szymski,* 275 Ill. App. 3d 481 (1995), supports plaintiff's assertion that there is a fiduciary relationship between plaintiff and defendant.

Defendant maintains that *Maercker* is not on point because (1) it deals with condominiums, which are creatures of statute, while the instant case involves townhomes, which are not such "creatures"; (2) *Maercker* involved declarations which expressly required the establishment of a capital reserve fund; and (3) *Maercker* found a fiduciary relationship under facts which do not exist here. In response, plaintiff argues that the *Maercker* court's determination of a fiduciary relationship was not dependent on the fact that a condominium association rather than a townhome association was involved. Instead, plaintiff maintains that the *Maercker* court's finding of a fiduciary relationship was based on the type of relationship that generally exists between a developer and an association. We agree with plaintiff's assessment of *Maercker*.

■ In *Maercker*, this court wrote in relevant part:
"We are convinced by the application of a simple, straightforward definition of a fiduciary relationship to the facts in this case that defendant stood in such a relationship to plaintiff. 'A fiduciary or confidential relationship exists where, by reason of friendship, agency, or business association and experience, trust and confidence are reposed by one person in another who, as a result, gains an influence and superiority over him.' [Citation.] Once such a relationship exists in a corporate setting, a fiduciary has the duty 'to act with utmost good faith and loyalty in managing the corporation' and is prohibited from enhancing his or her 'own personal

interests at the expense of corporate interests.' [Citation.] Furthermore, a fiduciary 'may not hinder or defeat the ability of the corporation to continue the business for which it was developed.' [Citation.] The trial court properly found that defendant had a fiduciary relationship with plaintiff." *Maercker*, 275 Ill. App. 3d at 484.

We find nothing in this language that limits it solely to situations involving condominiums. The language employed is general in nature and is apparently intended to relate to a variety of business relationships, including that of a townhome developer and a townhome association. Further, we find nothing persuasive in defendant's argument that the factual circumstances in *Maercker* are so different from those of the instant appeal as to distinguish these cases. Moreover, as noted above, *Maercker*'s conclusion that a fiduciary relationship exists is based upon the general relationship of the developer to the condominium association, not the specific language of the declaration involved. For these reasons, we find *Maercker* applicable to the instant appeal. In other words, we find that there is a common-law-based fiduciary relationship between a townhome developer and a townhome association.

Having reached this conclusion, we now address the above-cited question certified by the trial court, namely, whether defendant can modify or abrogate its fiduciary duty to fund a capital reserve account for units it owns by including the subject language in the Declaration.

Defendant maintains initially that the Declaration validly defines its obligations regarding the funding of a reserve account and the payments on common expenses and should be honored as written and recorded. Further, defendant contends that *Maercker* does not stand for the proposition that a townhome developer has an absolute duty to fund reserve accounts and to pay a proportionate share of common expenses on unsold units.

In response, plaintiff argues that the subject of the Declaration is ambiguous and must be construed against defendant, which wrote the Declaration. Additionally, plaintiff maintains that the Declaration makes no mention whatsoever of defendant's duty to fund capital reserves. Plaintiff also contends that the subject language in the Declaration is against public policy and, therefore, unenforceable. Plaintiff further asserts that the exculpatory language is not a bar to its complaint.

The parties have not cited any pertinent cases which involve townhome developers and townhome associations. As a result, it is necessary to look elsewhere, namely, cases involving condominiums, which provide this court with substantial guidance in determining this issue.

■ The Condominium Property Act (Act) provides: "In the performance of their duties, the officers and members of the board *** shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West 1996). Moreover, the failure of condominium board members to act in a manner reasonably related to their fiduciary duty results in "liability for the Board and its individual members." *Carney v. Donley*, 261 Ill. App. 3d 1002, 1011 (1994).

In *Kelley v. Astor Investors, Inc.*, 106 Ill. 2d 505 (1985), the disputed portion of the declaration sought to limit the liability of the condominium's board of managers to " 'any acts and omissions found by a court to constitute willful misconduct in the performance of duty.' " (Emphasis added.) *Kelley*, 106 Ill. 2d at 509. It was undisputed that this section of the declaration applied to Astor, as the interim board of managers. Plaintiffs argued that under the Act "any attempted exculpation or limitation of liability by Astor created a conflict of interest and a violation of public policy and thereby constituted a breach of trust on Astor's part." *Kelley*, 106 Ill. 2d at 510. Regarding this argument, the supreme court wrote:

> "The plaintiffs' contention is without merit. The very language of the Condominium Property Act provides that the developer's duties and rights should be no different than the duties and rights of the elected board of managers as specified in the declaration of condominium. We do not believe that the exculpatory clause violates public policy. The plaintiffs have not cited, and we have not found, any attempt by the legislature or judiciary to preclude a limitation on managerial liability. While it is true that the legislature has enacted an amendment to the Condominium Property Act which provides that the 'members of the board are required to exercise, whether appointed by the developer or elected by the unit owners, the care required of a fiduciary of the unit owners' [citation], *there is no controlling precedent for the plaintiffs' contention that the scope of such a fiduciary duty cannot be limited by the declaration of condominium*. Therefore, in order for the plaintiffs to prevail against Astor under count II for breach of trust, they must prove wilful misconduct on the part of Astor in performing the duties required of it as the interim board of managers." (Emphasis added.) *Kelley*, 106 Ill. 2d at 510.

It is useful to point out that, in the appellate case of *Kelley v. Astor Investors, Inc.*, 123 Ill. App. 3d 593 (1984), this court discussed plaintiffs' argument against the disputed section of the declaration thusly:

> "While plaintiffs [*sic*] argument that Illinois law recognizes a fiduciary relationship between an interim condominium board of managers and the condominium association members may be

meritorious, *there is no controlling precedent for their conclusion that the scope of such a fiduciary duty cannot be limited by the association bylaws*. As a general proposition, trust or contractual instruments containing an exculpatory clause for simple negligence are valid unless they violate public policy, involve one of a limited number of semipublic relationships (*e.g.*, common carriers) or result from overreaching or abuse of a fiduciary relationship. [Citations.]

We find nothing in the instant clause which would either violate our State's established public policy or evidence unfair overreaching by Astor Investors. Public policy, while not precisely defined, is located by reference to the State constitution, State statute, judicial decisions, and the constant practice of government officials. [Citation.] A review of the Illinois Condominium Property Act does not indicate any legislative intent to restrict limitation of condominium managerial liabilities. Such legislative silence prevents this court from injecting such a restriction, no matter how beneficial the attempted innovation may be. [Citations.] Even the 1984 act amendment cited by plaintiffs, while expressly creating a fiduciary relationship between the association members and the board of managers, does not preclude a limitation on managerial liability. The same conclusion can be deduced from a careful reading of the judicial opinion in the *Wolinsky* case cited by plaintiffs. *In the absence of any clear public policy mandates, we must consequently decline to invalidate the instant exculpatory provision.*

Our conclusion is further supported by the fact that there is no evidence of undue overreaching by Astor in fulfilling its fiduciary duties. The plaintiffs openly and voluntarily entered into the Westbrook West Condominium Association and they impliedly acquiesced in the bylaws drafted prior to the association's incorporation. *We have already concluded that there is no inherent impropriety in an elected board of managers' reliance upon a limited exculpatory clause, and we find no reason for disallowing the corporate-developer's use of a similar provision.* The public policy favoring freedom of contract prevails over any conflicting policies in the instant case [citations], and the trial court was consequently correct in upholding the clause at issue." (Emphasis added.) *Kelley*, 123 Ill. App. 3d at 598-99.

Even the primary case cited by plaintiff, *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449 (1997), appears to lend support to the view that exculpatory clauses can be used to limit a fiduciary's liability. In *La Salle*, the relevant part of the declaration of condominium limited the board's liability to " 'any acts or omissions found by a court to constitute gross negligence or fraud.' " (Emphasis omitted.) *La Salle*,

287 Ill. App. 3d at 454. The *La Salle* court noted that exculpatory clauses were not favored and were to be strictly construed. Further, such clauses were to have " 'clear, explicit, and unequivocal language.' " *La Salle*, 287 Ill. App. 3d at 455, quoting *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 165 (1986). The court then stated, "If the Board wanted to limit its liability to actual fraud, it should have said so." *La Salle*, 287 Ill. App. 3d at 455. From this statement, there is no indication that the *La Salle* court denied the right of the board to insert exculpatory language in the declaration. Rather, it took issue with the ambiguous use of the term "fraud."

■ While these cases deal with condominiums, we see no compelling reason not to apply their general conclusions to cases involving townhome developers and townhome associations. We are not aware of any cases, nor has plaintiff cited any cases that hold that a townhome developer cannot include exculpatory language in a declaration. Here, the Declaration was drafted and recorded prior to the purchase of any of the subject townhomes. As such, the Declaration was available for perusal to any prospective buyers. These prospective buyers were certainly free to look elsewhere, if the subject terms of the Declaration were not to their liking. Under these circumstance, we can find no violations of public policy or evidence of unfair overreaching by defendant to conclude that the inclusion of the disputed language in the Declaration is a breach of defendant's fiduciary duty.

Having so determined, we will also address another of plaintiff's contentions, namely, its assertion as to the inadequacy of the Declaration's language, as it is likely to arise again on remand. Specifically, plaintiff argues that its complaint alleges that defendant breached its fiduciary duty by failing to fund a capital reserve account and by failing to pay its proportionate share of common expenses. Plaintiff maintains that the disputed language does not expressly modify or abrogate defendant's fiduciary duty to fund a capital reserve account but only refers to defendant's obligation to pay its proportionate share of common expenses. Thus, plaintiff maintains that, even if this court finds that a fiduciary duty to fund a capital reserve account can be modified, the subject language does not pertain to such a reserve account.

In contrast, defendant contends that the Declaration's language is not at all ambiguous as to its obligations and that the language refers to both the paying of common expenses and the nonfunding of a capital reserve account.

■ We note that a contract is ambiguous if it is reasonably susceptible to more than one meaning. *P.R.S. International, Inc. v. Shred Pax Corp.*, 292 Ill. App. 3d 956, 965 (1997). Any ambiguity in

the terms of a contract must be resolved against the drafter of the disputed provision. *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill. 2d 460, 479 (1998). However, contractual language is not rendered ambiguous simply because the parties disagree on its meaning. *Lewis X. Cohen Insurance Trust v. Stern,* 297 Ill. App. 3d 220, 232 (1998).

■ After reviewing the disputed language, which is set out above, we find no meaningful ambiguity as it relates to defendant's responsibilities to pay assessments on units under construction or whose titles have not been conveyed and to fund a capital reserve account. Regarding such, the Declaration states that the assessment "shall be limited to the aggregate amount of actual operating expenses from time to time required to be paid with respect to such portion of the Premises." Actual expenses are defined as "those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Premises *and shall not include capital expenditures, amounts set aside as a reserve for contingencies or replacements, repair items or inventory times to the extent attributable to subsequent periods.*" (Emphasis added.) Clearly, these provisions set out what expenses defendant will pay, as well as defendant's refusal to fund a capital reserve account. Plaintiff's unsupported assertions to the contrary are unpersuasive.

In conclusion, we find that there was a fiduciary relationship between defendant and plaintiff from December 16, 1993, to October 31, 1995. We also find that defendant can generally abrogate or modify its fiduciary duties to plaintiff. Whether in this circumstance defendant can exclude the funding of a capital reserve fund is a factual determination for the trial court to make. The record on appeal is insufficient for us to make such a determination.

Further, by answering these general questions in the affirmative, we are not specifically addressing the trial court's denial of the motions to dismiss, pursuant to sections 2—615 and 2—619. That issue is not before this court.

Accordingly, we remand this cause for further proceedings consistent with this opinion.

Certified question answered; cause remanded.

GEIGER, J., concurs.

JUSTICE McLAREN, specially concurring:
I specially concur because I wish to comment on certain aspects of this case's procedural history.
The defendant sought the certification of a question involving its

affirmative defenses to the complaint. Rather than certifying the defendant's question, the trial court certified the plaintiff's question. This court initially refused to entertain the appeal but was ordered to do so by the Illinois Supreme Court.

Our opinion does not answer the question originally certified to this court. The opinion, rather, recasts the question in a manner that we believe addresses the true issue(s) to be resolved by this appeal. I have no qualms with this court recasting the question because I believe that, when the Illinois Supreme Court ordered this court to entertain this appeal, it implicitly ordered us to resolve the issue(s) in contention rather than the "awkward" issue prepared by the plaintiff and certified by the trial court.

I submit that, in granting or denying leave to appeal, this court is required to review the question certified pursuant to Supreme Court Rule 308, which is more restrictive than the supervisory exercise of discretion by the Illinois Supreme Court. 155 Ill. 2d R. 308; see *In re Detention of Anders*, 304 Ill. App. 3d 117, 120 (1999), citing *Lanxon v. Magnus*, 296 Ill. App. 3d 377, 379 (1998) (the scope of our review pursuant to Supreme Court Rule 308 is strictly limited to the questions certified by the trial court).

In the future, I would admonish the trial court and the parties to pay close attention to the question or questions certified under Rule 308 lest leave to appeal be denied, or worse, the question(s) certified be answered.